20587

G-H INSURANCE AGENCY, INC., Appellant, v. The TRAVELERS
INSURANCE COMPANIES, Respondent.

(241 S. E. (2d) 534)

*David M. Ratchford,* and *Donald E. Jonas,* of *Ratchford,
Eleazer and Cooper,* Columbia, *for Appellant,*

148

*Clinch Heyward Belser,* and *Charles E. Baker,* of *Belser, Baker, Belser, Barwick & Toal,* Columbia, *for Respondent,*

January 19, 1978.

LEWIS, Chief Justice:

This is an appeal from an order sustaining a demurrer to the complaint upon the ground that the complaint fails to allege a cause of action. Under settled principles, the facts as alleged in the complaint are taken to be true for the purposes of determining the sufficiency of the complaint against demurrer; and the facts are stated accordingly.

Plaintiff-appellant, G-H Insurance Agency, Inc.. (G-H), has operated on insurance agency for a number of years, soliciting and writing automobile insurance business for the defendant-respondent, Travelers Insurance Companies (Travelers), under an agency contract.

The law in South Carolina regulating the sale of automobile insurance underwent an important revision with the passage in 1974 of Act 1177, currently codified as Section 38-37-10 et seq. of the 1976 Code of Laws. The complaint alleges that, prior to the foregoing revision in the insurance law, G-H was encouraged by Travelers to solicit and write automobile insurance for those who would be classified as nonstandard risks and who could thus, under the then existing insurance law of this State, be charged a higher premium than those classified as standard risks; and that, as a result of the encouragement of Travelers, G-H wrote approximately fifty (50%) percent of the policies for Travelers as nonstandard risk policies subject to the higher premium.

The aforesaid 1974 revision of the insurance law eliminated the distinction between insureds and made it illegal to discriminate in rates, except as provided by the Insurance Commissioner, thus forcing automobile insurers, including Travelers, to establish a uniform rate structure for all insureds.

Following the adoption of the 1974 changes in the insurance law, Travelers notified G-H that the agency contract between them would be terminated as of October 1, 1975. This termination was made, according to the allegations of the complaint, in an effort by Travelers to avoid insuring those previously listed as nonstandard risks at the new uniform rate since G-H had a high volume of such business; and such termination was, therefore, in violation of Section 38-37-10 et seq. of the 1976 Code of Laws, particularly Section 38-37-940(2) which is as follows:

No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility.

Upon receiving notification of the termination of the agency contract, G-H made application to the Insurance Commissioner to prohibit such cancellation, but was informed that the Commissioner was without authority to intervene.

G-H then instituted this action to enjoin the termination of the agency contract and to recover damages in the amount of one million ($1,000,000.00) dollars allegedly resulting from the cancellation of the agency. The present cause of action rests upon the allegations that Code Section 38-37-940(2), quoted above, prohibits an insurance company from cancelling any agency to avoid writing insurance for higher risk insureds, and that the provisions of this statute accordingly modified a company's contractual authority to cancel an agent's license.

Travelers contends, on the other hand, that the statute in question does not grant any private cause of action for a violation thereof. Its demurrer to the complaint on this ground was sustained, from which this appeal is prosecuted.

For the purposes of this decision, it is therefore conceded that, (1) prior to the 1974 insurance law revision, an agency agreement existed between G-H and Travelers under which G-H, at the instigation of Travelers, procured for Travelers a large volume of nonstandard risk automobile insurance for which a higher premium was charged; (2) after the enactment of the 1974 statute, the distinction between insureds was eliminated and Travelers, as other insurance companies, was required to establish a uniform rate structure for all insureds; (3) Code Section 38-37-940(2), supra, prohibited Travelers, or any other insurance company, from cancelling an agency agreement in order to avoid writing insurance for higher risk or nonstandard insureds; (4) although prohibited by the quoted code section from doing so, Travelers terminated the agency of G-H, the appellant, "in an effort to avoid insuring those previously listed as nonstandard risks at the new uniform rate since the plaintiff (G-H) has a high volume of such business;" and (5) G-H has suffered damage by reason of the cancellation of the agency contract.

In the present posture of this litigation, there can be no doubt that the agency agreement was cancelled by Travelers in violation of the clear and specific provisions of Code Section 38-37-940(2) which prohibits the termination of such agency because of the writing of nonstandard risks. Travelers argues that it is not responsible for the damages resulting to its agent from its unlawful and wrongful breach of the agency contract, but is only responsible to the State for such penalties as may be provided under the State's regulatory powers. See: Code Section 38-37-940(1). The contention of Travelers, sustained by the lower court, is that the statute establishes no civil liability of any kind so as to create any private cause of action for a violation thereof.

There is no contention in this appeal that the State was without authority to enact the statutory prohibition against cancellation of the agency contract in question. It is only contended that the agent, whose agency contract was unlawfully terminated, has no right of redress for the resulting

damages to him, because, it is argued, the purpose of the prohibition was to protect the public interests and not the private rights of agents, relying upon such decisions as *Taggart v. Home Finance Group, Inc.,* 239 S. C. 345, 123 S. E. (2d) 250.

The question here is not whether the statute creates a private cause of action for its violation. This action is one for the alleged wrongful and unlawful cancellation of the agency contract, a right existing in G-H, the plaintiff, irrespective of the statute. The statute in question becomes relevant only in determining whether the cancellation was wrongful.

There can be no doubt that the cancellation of the agency contract was wrongful if the statutory prohibition against its termination was enacted for the benefit of the agent.

It must be conceded that the quoted Code Section [38-37-940(1)] was enacted as a part of the system designed to regulate insurance companies. There is, however, no specific language in the statute limiting its purpose and application to the benefit of the public to the exclusion of insurance agents. The present code section is a part of the statute enacted to assure non-discriminatory automobile insurance coverage, but other provisions of the statute mandated such coverage without the necessity for the enactment of Section 38-37-904(1) prohibiting, under certain conditions, the cancellation of agency contracts. See: Sections 38-37-310 and 38-37-320. We may therefore validly conclude that the adoption of the present section was motivated by some purpose beyond that of protection of the public alone.

The plain language used in the present section, relating to cancellation of agency contracts, shows that the General Assembly intended to also protect the private rights of insurance agents in bringing about the directed insurance reforms. The statutory prohibition against termination of agency agreements was imposed, therefore, largely for the

benefit of the insurance agents; and an agent who is terminated because of the prohibited reasons may recover in a private action for any damages sustained from such wrongful termination.

The line of decisions relied upon by respondent are inapplicable where, as here, the regulatory statute is intended to confer a private benefit.

The demurrer to the complaint should have been overruled.

The judgment is accordingly reversed.

RHODES and GREGORY, JJ., concur.

LITTLEJOHN and NESS, JJ., dissent.

LITTLEJOHN and NESS, Justices (dissenting):

We dissent and would affirm the order of the lower court. Let the same be printed along with additional observations as follows:

Upon an examination of the 1974 Act, the conclusion is inescapable that the legislature intended to protect members of the public in their procurement of insurance.

The law is well settled that a plaintiff claiming entitlement to relief based upon a violation of a statute must bring himself within the class of persons intended to be protected by the statute. 73 Am. Jur. 2d, *Statutes*, § 433. Chapter 37 of the South Carolina Code of Laws (1976) is entitled "Regulation of Autimobile Insurance." There is nothing in § 38-37-110, which declares the purpose of the article, to indicate the creation of a right of civil liability. In fact, § 38-37-940, the statute involved here, expressly provides for an administrative sanction for its violation. It states:

"Any act in violation of this section shall constitute an act of unlawful discrimination and unfair competition which, if willful, shall result in the suspension or revocation of the insurer's certificate of authority for not less than six months."

In *Taggart v. Home Finance Group, Inc.,* 239 S. C. 345, 123 S. E. (2d) 250 (1961), an agent sought to recover under a statute prohibiting splitting commissions with persons not licensed as agents. This Court found such an insurance regulation to be designed primarily to protect the public rather than private individuals. "We find nothing in the statutes regulating insurance companies and their agents purporting to establish civil liability." 239 S. C. at 350, 123 S. E. (2d) [250] at 252. Accordingly, we conclude we were unable to write such a remedy into the statute.

Moreover, statutes of this type, although dealing with agents as a part of the statutory scheme for implementing coverage, customarily are concerned with the protection of the public. As stated in 16A Appleman, *Insurance Law and Practice,* § 8951:

"Generally statutes dealing with insurance agents are designed to protect the insuring public and not to regulate contract relations between insurance companies doing business in the state and their agents."

The majority opinion purports to derive a right of action in appellant by the provision's failure to limit its purpose and application to the benefit of the public. We submit the proper inquiry to be whether the statute indicates an intent to broaden its protection beyond members of the public. Finding no language purporting to create a right of action on the part of an agent, this Court is not at liberty to write such a remedy into the statute. *Taggart, supra.*

Whether or not appellant possesses a cause of action for breach of contract is not before us. The lower court noted in its order that in passing upon a demurrer the court is limited to a consideration of the pleadings under attack. *Guy v. National Old Line Ins. Co.,* 252 S. C. 47, 164 S. E. (2d) 905 (1968). It then found the appellant based its claim for damages and injunctive relief upon an alleged violation of present § 38-37-940(2). The court stated:

"The threshold issue presented for determination by the defendant's Demurrer is thus whether the provisions of that statute establish civil liability of any kind so as to create any private cause of action for a violation thereof."

This opinion, therefore, is properly limited to the question whether § 38-37-940(2) affords a private right of action for its violation. Finding no indication of a legislative intent to establish civil liability thereby, we would affirm the order of the lower court.[1]

The majorty opinion, having reversed the lower court, causes the case to be remanded for further action. Our study of the record reveals a "Fourth Defense" in the answer of the defendant, whereby it is alleged that the statute is invalid as impairing the obligations of already existing contracts, in violation of Art. I, § 4, of the South Carolina Constitution, and Art. I, § 1, of the United States Constitution. The merit of this defense is, of course, not before us, but for the guideance of the bench and bar, we comment that contests over this issue might properly have been litigated, by summary judgment or otherwise, such that this one appeal would have sufficed to obtain a ruling on both important questions.

## ORDER OF JUDGE BRISTOW

This matter is before me upon the Demurrer interposed by the defendant to the Complaint in the above-entitled action upon the ground that the Complaint does not state facts sufficient to constitute a cause of action in that it appears upon the face thereof that it is based upon a statute which does not grant any private right of action in favor of the plaintiff against the defendant.

The Complaint alleges that the plaintiff is a South Carolina corporation with its principal place of business in Con-

---

[1] The order of Judge Bristow on appeal before us reaches the same conclusion as United States District Court Judge Robert W. Hemphill in the case of *George L. Johnson & Sons, Inc. v. Grain Dealers Mutual Ins. Co.*, dated June 29, 1977, and as United States District Court Judge Robert F. Chapman in the case of *Roy E. Garris d/b/a Garris Insurance Agency v. Hanover Ins. Co.*, dated August 3, 1977. Neither of these orders have been published.

way, South Carolina; that the defendant is an insurance company authorized to do business in South Carolina; and that the defendant is subject to the statutes, rules and regulations affecting insurance companies doing business in this State as promulgated by the South Carolina Legislature.

The Complaint further alleges that by virtue of a contract between the plaintiff and the defendant, the plaintiff is authorized to solicit and write automobile insurance business for the defendant and has been so authorized for a number of years.

The Complaint refers to a portion of a comprehensive Act regulating automobile insurance in this State enacted in the 1974 General Assembly (Act No. 1177, page 2718, Acts and Joint Resolutions) currently codified in the 1975 Cumulative Supplement to the Code as Chapter 6.2 of Title 37. The Complaint alleges that prior to the enactment of that legislation the plaintiff had been encouraged by the defendant to solicit and write automobile insurance for those who would be classified as non-standard risks and who could thus be charged a higher premium than those persons classified as standard risks; that as a result of that encouragement, the plaintiff solicited and wrote approximately fifty percent of the automobile policies which it wrote for the defendant as non-standard risk policies subject to the higher premium; and that the 1974 Act eliminated the distinction among insureds and made it illegal to discriminate in rates among insureds, except as provided by the Insurance Commissioner, thus forcing automobile insurers, including the defendant, to establish a uniform rate structure for all insureds.

The Complaint further alleges that the plaintiff was notified on or about July 18, 1975, by the defendant that the contract between the plaintiff and the defendant to write automobile insurance would be terminated as of October 1, 1975, and that the plaintiff is informed and believes that the defendant terminated the agency contract in an effort to avoid insuring those previously listed as non-standard risks

at the new uniform rate since the plaintiff had a high volume of such business.

The Complaint alleges that the plaintiff is informed and believes that the contract termination by the defendant is in violation of Section 37-591.48 of the 1975 Cumulative Supplement to the South Carolina Code, and further alleges that said Section makes it unfair competition and unlawful discrimination to impose any detriment upon any agent for the purpose of avoiding any class or type of automobile insurance risk. The Complaint further alleges that the plaintiff is informed and believes that the action of the defendant is in violation of Section 2 of the aforesaid Section 37.591.48 and alleges that said Section 2 of the said statute makes it illegal to terminate the agency contract because of the volume of automobile insurance business placed with a company on account of the statutory mandate of coverage or because of the amount of the agent's automobile business which the insurer has deemed it necessary to reinsure in the facility. Section 37-591.48 reads in pertinent part as follows:

"Avoiding certain classes or types of risks; penalty; exceptions; canceling agent's representation.—No insurer of automobile insurance shall directly or indirectly by offer or promise of reward or imposition or threat of penalty or through any article or device whatsoever, confer any benefit upon any agent or impose any detriment upon any such agent for the purpose of avoiding any class or type of automobile insurance risk which the insurer deems it necessary to reinsure in the Facility; nor shall any such offer or promise of reward or imposition or threat of penalty in connection with any other line or type of insurance be so tied to automobile insurance as to have a tendency to induce the agent to avoid any such class or type of automobile insurance risk; nor shall any insurer of automobile insurance provide to agents, directly or indirectly, orally or in writing, any listing of classes or types of automobile insurance risks which it deems necessary to reinsure in the Facility. Any act in violation of this section shall constitute an act of un-

lawful discrimination and unfair competition which, if willful, shall result in the suspension or revocation of the insurer's certificate of authority for not less than six months. Any agreement made in violation of this section shall be void.

"\* \* \*

"(2) No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility."

The Complaint further alleges that the defendant has taken certain actions which would lead to the termination of the agency contract with the plaintiff, such as notifying the plaintiff's customers that the plaintiff is no longer authorized to do business for the defendant; that these actions have greatly damaged the plaintiff's business; that the plaintiff has requested the South Carolina Insurance Commissioner to grant appropriate relief in this case, but that the said Insurance Commissioner has refused to take action on the ground that he does not have authority to grant the necessary relief; that the plaintiff has suffered great damage to his business as a result of the action of the defendant; and that the plaintiff is informed and believes that if the defendant is allowed to terminate the agency contract, the plaintiff will suffer irreparable damage to its business.

The plaintiff prays that the Court issue a temporary injunction enjoining the defendant from terminating its agency contract with the plaintiff; that the Court permanently enjoin the defendant from terminating the agency contract with the plaintiff in violation of the South Carolina Code; that the Court grant judgment for the plaintiff against the defendant in the amount of One Million and no/100 ($1,000,000.00) Dollars, actual and punitive damages, and

the costs of the action; and that the Court grant such other and further relief as the Court may deem just and proper.

It appears from the record that pursuant to a Rule to Show Cause issued by Honorable Clyde A. Eltzroth, as Presiding Judge, Fifth Judicial Circuit, on September 25, 1975, proceedings were had in this matter in connection with the temporary relief prayed for in the Complaint and that Honorable Clyde A. Eltzroth issued his Order dated October 31, 1975, with respect thereto requiring the defendant to reinstate the plaintiff's agency contract until further Order of this Court.

The defendant's Demurrer to the Complaint came on for hearing before me on the merits on December 20, 1976. After carefully considering the allegations of the Complaint and after hearing arguments of counsel for both parties and considering the written Briefs of said counsel, I am of the opinion that the statute referred to in the Complaint does not create any private right of action in the plaintiff for damages or injunctive relief as sought in the Complaint and that the Demurrer should be sustained.

It is, of course, elementary that in passing upon a Demurrer the Court is limited to a consideration of the pleading under attack. *Guy v. National Old Line Insurance Company,* 252 S. C. 47, 164 S. E. (2d) 905 (1968). It appears from the allegations of the Complaint that the plaintiff bases its claim for damages and injunctive relief upon an alleged violation by defendant of Section 37-591.48 of the 1975 Cumulative Supplement to the Code in the termination of plaintiff's agency contract. The threshold issue presented for determination by the defendant's Demurrer is thus whether the provisions of that statute establish civil liability of any kind so as to create any private cause of action for a violation thereof.

In considering the question of whether the 1974 Act was intended to create any private right of action for violation

of its terms, examination must be made as to the legislative intent to create or withhold a private right of action as evidenced by the terms of the statute. In this connection, I have noted the general principles of law set forth in 73 Am. Jur. 2d *Statutes,* Sec. 432, page 530, as follows:

"The legislative intent to grant or withhold a private right of action for the violation of a statute, or the failure to perform a statutory duty, is determined primarily from the form or language of the statute. The nature of the evil sought to be remedied, and the purpose the statute was intended to accomplish, may also be taken into consideration. In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability. The question whether a liability arising from the breach of a duty prescribed by statute accrues for the benefit of an individual specially injured thereby, or whether such liability is exclusively of a public character, depends upon the nature of the duty imposed and the benefits to be derived from its performance, and the relevancy of the rule laid down by the statute to private rights."

I have carefully examined the 1974 Act and do not find any provision therein which purports to establish civil liability. On the contrary, the Act provides a clearly stated administrative sanction for the violation alleged in the Complaint in this action. The sanction provided is that "Any act in violation of this section . . . if willful, shall result in the revocation or suspension of the insurer's certificate of authority for not less than six months." (Sec. 37-591.48)

Furthermore, it appears that Section 37-591.48 was enacted as part of a new chapter to be added to the general insurance law in Title 37 of the 1962 Code and thus became an integral part of that general insurance law. (Chapter 6.2, Title 37, 1975 Cumulative Supplement). other sections of that general insurance law place responsibility for enforce-

ment of the insurance laws upon designated public officials. Section 37-56 of the 1962 Code, as amended, provides that the Insurance Commission, through the Chief Insurance Commissioner, shall carry out and enforce all the insurance laws of the State, as follows:

"(1) See that all laws of this State governing insurance companies or relating to the business of insurance are faithfully executed, and to that end it may make rules and regulations, not inconsistent with law, to enforce, carry out and make effective the provisions of this Title and all other insurance laws of this State, the enforcement or administration of which is not otherwise specifically provided for, and may likewise, from time to time, withdraw, modify or amend any such regulations;

"* * *

"(3) Institute and prosecute criminal violations of any of the laws relative to insurance companies or the business of insurance or violation of any of the provisions of this Title, and report to the Attorney General any violation of the laws relative to insurance companies or the business of insurance which it may deem necessary to report. The Attorney General shall institute civil action for such violations, either by himself or through such other attorney as the Attorney General may select.

"* * *"

Under Section 37-112 of the 1962 Code, as amended, the Chief Insurance Commissioner is also authorized to revoke or suspend the certificate of authority of a company which he finds has "failed to comply with the law." A right of appeal from actions of the Commissioner or the Insurance Commission taken pursuant to the terms of the new Chapter 6.2 is provided by Sec. 37-591.5. That Section provides that the procedure set out in Sections 37-69 through 37-74 shall be followed in such matters.

When the provisions of the new Chapter 6.2 of Title 37 are considered together with other sections of that Title, it

is apparent that the prohibitions and penalties provided therein, like the numerous other penalties and prohibitions contained in other sections of Title 37, are to be enforced by the Chief Insurance Commissioner for the benefit of the public generally and that there was no intention on the part of the General Assembly to establish civil liability or to create private causes of action.

The decision of the South Carolina Supreme Court in *Taggart v. Home Finance Group, Inc.,* 239 S. C. 345, 123 S. E. (2d) 250 (1961), illustrates that the South Carolina statutes regulating insurance companies and their agents do not establish civil liability and Chapter 6.2 of Title 37 contains no provision supporting any contrary construction as to the specific matters covered thereby. In the *Taggart* case, an agent sought to recover commissions on policies of insurance sold by him which had been paid to his employer in violation of South Carolina statutes prohibiting splitting of commissions with persons not licensed as agents, providing licensing requirements and requiring all business done in this State by insurance companies to be transacted by their regular authorized agents. The agent claimed that the statute gave him a private right of action. A Demurrer to the Complaint for insufficiency was sustained on the ground that the statutes relied upon were not statutes of entitlement but were only regulatory and created no right in the plaintiff to recover commissions. In affirming the judgment, the Supreme Court said (123 S. E. (2d) 250, 252) :

"The requirement that insurance companies doing business in this State and their agents be licensed is primarily for the protection of the public and not for the protection of private rights. Section 37-354 is a prohibition against splitting commissions. Such a provision is not uncommon in statutes regulating insurance. Appleman, Insurance Law and Practice, Volume 16, Section 8972. *We find nothing in the statutes regulating insurance companies and their agents purporting to establish civil liability.* While there are provisions imposing a penalty upon insurance companies for the

violation of Section 37-247 and various other sections of the Insurance Law, *these penalties are not imposed for the benefit of private individuals and may according to the express terms of the statute be recovered only in an action brought in the name of the State.* The code sections cited by appellant do not undertake to create a right on the part of an agent to recover commissions on insurance sold by him. We do not think they can reasonably be construed as giving him such a cause of action and we are not at liberty to write such a remedy into the statute. *Broderick v. Travelers Insurance Co.,* D. C. 731 F. Supp. 354, affirmed by the Circuit Court of Appeals, 9 Cir., 175 F. (2d) 694, tends to support the foregoing conclusion. (Emphasis added.)

I have also noted the decision of the Supreme Court of New Jersey in *Retail Clerks Welfare Fund, Local No. 1049, AFL-CIO v. Continental Casualty Company,* 71 N. J. Super., 221, 176 A. (2d) 524 (1961). In that case an unincorporated trust fund which had contracted with an insurer for accident and health group coverage for union employees, brought suit against the insurer because the insurer discriminated in its rebates based on the experience refund as between the trust fund and other policyholders of the same class. The statute alleged to have been violated was N.J.S.A. 17:29B which regulated trade practices in the business of insurance and prohibited discrimination and deceptive trade practices. The plaintiff contended that the provisions of the statute were incorporated into its contract of insurance with the defendant and gave the plaintiff a cause of action for breach of contract. The Court rejected the plaintiff's contention and held that the Complaint did not state a cause of action upon which relief could be granted by civil action; saying (76 A. (2d) 524, 526) :

"We do not construe N.J.S.A. 17:29B as being incorporated into contracts of insurance written in this State and thereby creating a cause of civil action for breach of contract for the individual policyholder. It is a statute defining and prohibiting certain abuses in the insurance business and

empowering the Commissioner of Banking and Insurance of this State to deal with them."

The Court further held that the New Jersey statute by virtue of the nature of its subject matter (regulation of trade practices in the business of insurance) dealt with a wrong to the public rather than to the individual and did not give rise to individual or private causes of action in the absence of a specific provision therefor.

The same result was reached in *Simmons v. Continental Casualty Company,* 285 F. Supp. 997 (D. Neb. 1968), affirmed 410 F. (2d) 881 (8th Cir. 1969), wherein the Court held that an Illinois statute prohibiting discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of insurance or in the benefits payable thereby, or in any of the terms or conditions of the policy, was not intended to create a private cause of action and could not be incorporated into the plaintiff's insurance contract to create a cause of action where none would otherwise exist.

Nothing is contained in Chapter 6.2 of Title 37 which would incorporate the provisions of that Chapter into agency contracts or any other contracts and no provision is made for private causes of action. I conclude that the statute is regulatory legislation of the same nature as other regulatory statutes contained in Title 37 of the Code as discussed by the Court in *Taggart v. Home Finance Group, Inc.,* 239 S. C. 345, 123 S. E. (2d) 250 (1961) and that it does not create any private cause of action for a violation thereof.

Moreover, the law is well settled that a plaintiff claiming entitlement to relief based upon a violation of a statute must bring himself within the class of persons intended to be protected by the statute. The rule is stated in 73 Am. Jur. (2d) Statutes, Sec. 433, as follows:

"Persons entitled to take advantage of a given law are members of the class intended to be protected by the stat-

ute, or for the benefit of whom the statute was enacted. Indeed, even though the violation of a statute is regarded as actionable, it is generally required that the injury be done to one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance with the statute is owed. . . ."

After carefully considering the purposes of the statute as expressed by the General Assembly in the Act itself and the language used by the General Assembly in the statute in setting forth the proscribed conduct, I am of the opinion that the plaintiff is not within the class of persons intended to be protected by the statute.

It is apparent from the express terms of the Act that the primary purpose of the statute is to protect the members of the public in their right to obtain insurance from the insurer of their choice. I have found nothing in the Act which would indicate that the Act was intended to protect insurance agents in their agency contracts or in any right to receive commissions from the continued sale of insurance. In the enactment of the 1974 Act, with reference to Chapter 6.2 the General Assembly found and declared that automobile insurance was a necessity for individuals but was unavailable for many, saying:

". . . [T]hat automobile insurance has become a legal and practical necessity for individuals; but, notwithstanding the necessity for such insurance, such individuals are denied coverage on a voluntary basis through rejection, cancellation, or non-renewal of automobile insurance arbitrarily, capriciously and without objective reasons, as a result of which, heretofore, intolerable numbers of such risks have been consigned to the inferior coverages, high rates, unfair discriminations and other injustices of the Assigned Risk Plan and other residual risk insurance markets." Section 3, Article II, Section 1 of Act No. 1177 (Not Codified).

In keeping with that finding relating to the necessity of insurance for individuals, the General Assembly declared as its first purpose:

"1. To provide that every such automobile insurance risk which is insurable on the basis of the criteria established herein shall be entitled to automobile insurance from the automobile insurance insurer of the applicant's choice on the basis of the same rates, policy forms, claims service, and other services provided by such insurer to all other applicants or insureds falling within the classification of risk and territory under the applicable risk and territorial classification plan promulgated by the Commissioner with the approval of the Commission." Sec. 37-591.1, 1975 Cumulative Supplement.

Other purposes are stated to implement the aforesaid purpose, including providing for a reinsurance facility for automobile insurance insurers in which all such insurers shall participate, with provision for prohibitions and penalties in respect to excessive utilization of the facility, and providing for prohibition and penalties in respect to unfairly discriminatory or unfairly competitive practices having as their purpose or effect evasion of the statutory mandate of coverage provided in the Act or imposing an undue or unfair burden upon other insurers of automobile insurance through excessive use of the Reinsurance Facility. However, nowhere in the stated purposes of the Act is there any mention of any purpose of protecting insurance agents from cancellation of their agency contracts or of providing for any right of an insurance agency to continue to receive commissions on the renewal of policies written by it for its clientele prior to the passage of the Act. It is noted from the language of the Act last quoted above that the Act declares that its purpose is to provide that an applicant for insurance shall be entitled to automobile insurance from the "automobile insurance *insurer*" of his choice. No mention is made of an applicant's entitlement to insurance from the "agent" of his choice.

In a subsequent Article of Section 3 (Article VI), designed to achieve the legislatively mandated purpose of making insurance available to all persons qualified, the Act provides in the first portion of Article VI (Sec. 37-591.48) that

no insurer of automobile insurance shall directly or indirectly by offer or promise of reward or imposition or threat of penalty or through any artifice or device whatsoever *"confer any benefit* upon any agent or impose any detriment upon such agent" for the purpose of avoiding any class or type of automobile insurance risk which the insurer deems it necessary to reinsure in the reinsurance facility provided for in the Act. It is readily apparent from that language that the statute is not designed to protect insurance agents or grant any cause of action to such agents. An agent upon whom a benefit had been conferred would not have any private right of action; the carrying out of the purpose of the Act was necessarily left to others. The prohibition against imposing a detriment is structured in precisely the same way in the language of the Act as the prohibition against conferring a benefit. It is apparent, therefore, that the prohibition against "imposing a detriment" does not create any right of action for the agent in one case any more than in the other. In both cases the carrying out of the purposes of the Act is left to others. It is obvious that in setting forth the proscribed conduct as quoted above, the Legislature was concerned with the rights of the public and not agents and this is equally true with the other illustrations of prohibited conduct immediately following in the Section, such as the prohibition against tying an offer or promise of reward or imposition or threat of penalty in connection with any other line or type of insurance so as to tend to induce the agent to avoid any such class or type of automobile insurance risk and the prohibition against providing agents with any listing of classes or types of automobile insurance which the insurer deems necessary to reinsure in the Facility. The same theme of prohibited benefit to the agent appears again in connection with prohibited conduct.

The Act further provides in Section 4 of Article VI (Sec. 37-591.48) that any act in violation of that Section shall constitute "an act of unlawful discrimination" and an act of "unfair competition." It is apparent by reference to Sec-

tion 1 of Article VI (Sec. 37-591.45) that "unlawful discrimination" relates to discrimination between "automobile policyholders" or "applicants for such insurance." That section provides:

"It shall be an act of unlawful discrimination for any insurer of automobile insurance to make any distinction between automobile insurance policyholders or applicants for such insurance with respect to coverage, rates, claims, or other services except as such distinctions are provided for in the rating plans for the classification or risks and territories promulgated by the Commissioner and approved by the Commission."

"Unfair competition" as used in § 37-59.48 necessarily relates to other insurers with which the insurer is in competition. Obviously, an insurance company is not in competition with its agents.

In a later portion of the same Section (Sec. 37-591.48), the 1974 Act provides that an insurer shall not cancel an agent "primarily" because of the volume of automobile business placed with it by the agent "on account of the statutory mandate of coverage" nor because of the "amount of the agent's automobile business which the insurer has deemed it necessary to reinsure in the Facility." The operation of the prohibition is to insure that no prospective insured by reason of the class of risk into which he falls should be denied insurance. Such was its purpose. Its purpose was not to benefit the agents by creating a cause of action for them.

While the 1974 Act deals with agents as a part of the statutory scheme for implementing the mandate of coverage, it is plain that its primary concern is the protection of the insuring public as is customarily the case with statutes of this nature. As stated in Appleman's Insurance Law and Practice, (2d) 16A, Sec. 8951:

"Generally statutes dealing with insurance agents are designed to protect the insuring public and not to regulate con-

tract relations between insurance companies doing business in the state and their agents. . . ."

Although an insurance agent may be an incidental beneficiary of the enforcement of Sec. 37-591.48, he is not a member of the class it was designed to protect and therefore has no right of action for a violation thereof. As stated in 1 C. J. S. Actions § 9:

"* * *

"The right of action under such a statute exists only in favor of a person or persons who had an interest in the performance of the duty and for whose benefit the duty was imposed. It does not exist in favor of one, to whom the benefit to be derived from the performance of the statutory duty is merely incidental and no part of the design of the statute, and such a person cannot base a cause of action on a violation of the statute."

I therefore conclude that even if Section 37-591.48 should be construed as providing a civil remedy to an applicant for automobile insurance denied such insurance from an insurer of his choice or to another insurer aggrieved by a violation of the statute, the plaintiff is not a member of the class the statute was designed to protect and the defendant's Demurrer should be sustained for this additional reason.

In connection with the question of the plaintiff's individual standing to sue for a violation of Section 37-591.48, I have also noted the general rule that for a person to maintain a cause of action based upon an asserted violation of a statute, he must bring the injury sustained by him within the harm intended to be guarded against by the statute. See Prosser, *Law of Torts,* 4th Ed., Sec. 36. It is apparent from the stated purpose of the Chapter 6.2, that the harm intended to be guarded against is the nonavailability of insurance to the members of the public. The harm allegedly sustained by the plaintiff for which relief is sought in this action is a business loss to the plaintiff as an insurance agent and is not related to the harm the statute was designed to prevent.

The plaintiff contends that the Complaint in this action states a cause of action in tort for unfair competition under the common law and under the statute. I find the plaintiff's contentions in this regard to be without merit. There are no facts alleged in the Complaint that fall within the concept of the common law tort of unfair competition. The gravamen of the Complaint is simply the termination by the defendant of an agency contract between the plaintiff and the defendant and the Complaint does not allege that the plaintiff is in any sphere of competition with the defendant. Furthermore, there are no allegations in the Complaint which allege any factual basis of any duty on the part of the defendant to continue the plaintiff's agency contract aside from the allegations concerning the statute. Paragraph 10 of the Complaint specifically alleges, on information and belief, that the action of the defendant is in violation of the statute.

Although the General Assembly designated the conduct proscribed in Section 37-591.48 as "unlawful discrimination" and "unfair competition" those words must be regarded as having their ordinary meaning and must be viewed in the light of the context in which they are used. As indicated hereinabove, analysis of Chapter 6.2, Title 37, 1975 Cumulative Supplement to the Code, discloses that the primary purpose of the legislation is to assure that members of the public who require automobile insurance shall be able to obtain such insurance. In furtherance of that purpose, the new chapter contains provisions to assure that such members of the public shall not be unfairly discriminated against contrary to the mandate of coverage provided by the Act; that one insurer shall not compete unfairly with another; and that the Reinsurance Facility provided for by Article V of the Chapter shall not be overburdened. I find nothing in the statute which would indicate that the Legislature felt that termination of any agency contract would constitute unlawful discrimination against, or unfair competition with, the agent by the company. The term "unfair competition" used in the statute in reference to the conduct proscribed

therein obviously refers to other insurers with which the insurer concerned is in competition. Hence, if there is any private cause of action created from the designation of the proscribed conduct as unfair competition, such cause of action would lie not in the agent of the insurer, but in those insurers in competition with the insurer who has engaged in the conduct declared to be unfair competition.

Plaintiff further contends that the Order of Honorable Clyde A. Eltzroth referred to hereinabove granting plaintiff a temporary injunction against the defendant is binding on this Court in passing upon the defendant's Demurrer.

It appears from the record that on September 29, 1975, defendant was served with the Summons and Complaint in this action, together with a Rule requiring defendant to show cause before Judge Eltzroth on October 2, 1975, why the defendant should not be enjoined *pendente lite* from terminating the agency contract and ordered to restore the agency relationship. It appears further that defendant filed a Return to that Rule to Show Cause dated October 1, 1975, including the defense, among others, that the statute referred to in the Complaint does not create any right in the plaintiff to have its engagement as agent for the defendant continued by injunctive relief. It appears further that the parties entered into a stipulation dated October 2, 1975 that if a temporary injunction should be issued in another action previously brought by Insurance Financial Services, Inc., against the defendant herein, and with respect to which testimony had already been taken in connection with a similar request for temporary relief, the defendant would consent to a similar injunction with respect to the plaintiff in this action. It appears further that defendant thereafter served its Demurrer dated October 15, 1975, as its first pleading on the merits. Judge Eltzroth issued his Order in the Insurance Financial Services, Inc. action dated October 31, 1975, granting the plaintiff therein a mandatory temporary injunction requiring reinstatement of the plaintiff's agency contract until further Order of this Court, and, in accord-

ance with the aforesaid stipulation, an Order was also issued by Judge Eltzroth on that date adopting the Order in the Insurance Financial Services, case as the Order in this case. No appeal was taken by the defendant from that Order.

After careful consideration of the matter, I conclude, and so hold, that the previous Order of Judge Eltzroth is not binding on this Court in passing upon defendant's Demurrer. The Order of Judge Eltzroth is not, and does not purport to be,[1] a decision on the merits. The general rule is that an interlocutory order granting or denying an injunction is not the law of the case or *res judicata* as between the parties to the action where there has been no affirmance of the Order by the State Supreme Court, except, of course, as to the issue of whether a temporary injunction should be granted. The rule is stated in 42 Am. Jur. (2d) *Injunctions,* Sec. 318, as follows:

". . . An order granting or denying an interlocutory injunction, which has not been affirmed by the Supreme Court of the state, does not become the law of the case and does not require the court to grant or deny a permanent injunction in accord with the interlocutory decree. . . ."

The decision of the South Carolina Supreme Court in *Montgomery v. Robinson,* 93 S. C. 247, 76 S. E. 188 (1912) is in accord with the foregoing principle. In that case the Court was concerned with an objection to the Complaint for insufficiency and held that the Order of one Circuit Judge on that issue in connection with the granting of a temporary injunction from which no appeal was taken was not binding on another Circuit Judge except with respect to the plaintiff's right to a temporary injunction. In the *Montgomery* case, the defendant sought to attack the previously issued Order granting a temporary injunction from

---

[1] Judge Eltzroth's Order of October 31, 1975, in the Insurance Financial Services, Inc. case, which was adopted for the purposes of this action, states: "I have made no final determination as to the merits of this case, and have considered the merits of the case only to the extent necessary to determine whether a prima facie showing has been made."

which no appeal had been taken by a Motion before another Circuit Judge to dissolve the temporary injunction. The Court stated (93 S. C. 247, 253, 76 S. E. 188, 190) :

". . . It is stated in Judge Watt's order [who issued a temporary restraining order and rule returnable before Judge Copes] that the complaint states a cause of action for injunction, and a similar holding was necessarily implied in the order of Judge Copes [who issued an injunction *pendente lite*], and the matter is, therefore, *res judicata, only so far, however, as the right to an injunction pendente lite is concerned, for, as frequently held, the findings and conclusions of a Judge on motions for preliminary or temporary injunctions are not binding on the Court when it comes to decide the case on its merits.*" (Emphasis added.)

The case of *Fraser v. Fred Parker Funeral Home*, 201 S. C. 88, 21 S. E. (2d) 577 (1942), illustrates the established principle that a judge considering a new case on the merits is not bound by decisions on legal issues made by a judge considering the case on application for a temporary injunction. Plaintiffs sought to enjoin the continued operation of a funeral home in their neighborhood. An injunction *pendente lite* was granted by one judge on what was said to be the majority rule as to the requirements of the law for the enjoining of funeral homes. After testimony was taken before a referee and a report rendered thereon, the judge deciding the case on its merits as to the issuance of a permanent injunction held that he was not bound by the decision of the judge at the temporary injunction stage as to which rule was to be followed. Justice Lide said in this dissenting opinion that a temporary injunction order (there an Order refusing to dissolve a temporary injunction) "does not determine the law of the case" (21 S. E. (2d) 577, 587), and no disagreement with the statement of the judge deciding the case on the merits as to his freedom with regard to the law to be applied was expressed by any Justice. The *Funeral Home* case, then illustrates and amplifies the principle that I am as free to rule on legal issues as on factual issues, and

it can hardly be contended that a ruling on the facts at the temporary injunction stage is binding at the merits stage.

Also pertinent is the Court's discussion of the nature of an Order for temporary injunction in *Kinder v. Atlantic Coast Lumber Corp.*, 107 S. C. 404, 93 S. E. 7 (1917), wherein an appeal was taken from an Order of Judge Prince refusing to dismiss the Complaint and to strike the case from the Calendar on the ground that the rights of the parties had been fully settled and determined by an Order previously made by Judge Wilson at chambers. In holding that the Order of Judge Wilson, made on application for a temporary injunction construing a deed, was not a final adjudication, the Court pointed out (93 S. E. 7):

*"A circuit judge in an application for a temporary injunction cannot try the case on its merits and make a final order that disposes of the case on its merits.* The question for him to determine is solely whether in the exercise of his discretion he will grant or refuse the application for the temporary restraining order, and for this purpose he can inquire sufficiently into the merits of the case to say how his discretion will be exercised, whether he will grant or refuse the order. He can only consider at chambers the motion before him. He cannot try the case at chambers on its merits and pass an order dismissing the complaint or any other order that practically disposes of the merits of the cause. *Judge Wilson's order cannot have any other effect than to determine the matter properly before him, to wit, granting or refusing the application for the temporary order applied for. His order necessarily could not prejudice the plaintiff or defendant on the final hearing of the case on its merits.* Judge Wilson's order was simply his views and idea on the merits of the case on the application then before him. He had no right at chambers to adjudicate the merits of the case, being entirely without jurisdiction to do so. . . ."

I am mindful of the binding effect of Judge Eltzroth's Order on the parties to this cause and on this Court with

respect to the question of whether a temporary injunction should issue or remain in force pending the determination of the case on the merits. However, that question is not before me. Defendant is not attacking the previous Order of Judge Eltzroth granting the temporary injunction. By the Demurrer now before the Court, defendant is seeking a final Order disposing of the case on the merits. This Court's determination of that Demurrer is thus not controlled by the previous Order granting the temporary injunction. This result naturally follows not only from the limited jurisdiction exercised by the Court in the issuance of such an Order but also from the limited nature of the inquiry made with respect to the merits in a hearing for a temporary injunction and the provisional nature of the remedy. The purpose of a temporary injunction is to preserve the *status quo* and prevent possible irreparable harm pending a final decision on the merits and the Court considers the merits, whether they involve factual issues or legal questions, only preliminarily and without final decision thereon. As noted in *Transcontinental Gas Pipe Line Corp. v. Porter,* 252 S. C. 478, 167 S. E. (2d) 313, 315:

". . . [W]hile a judge at chambers, cannot *finally decide* anything as to the merits, he can and ought to look into the merits, whether they present issues of law or fact, and *consider* them to the extent necessary to enable him to exercise his discretion wisely." (Emphasis by the Court.)

I therefore conclude that this Court is not bound by Judge Eltzroth's preliminary consideration of the issues raised by defendant's Demurrer in connection with the issuance of a temporary injunction and that the findings and conclusions of Judge Eltzroth set forth in his Order of October 31, 1975, with respect thereto do not constitute the law of the case and are not *res judicata* as between the parties insofar as the merits of the issues raised by the Demurrer are concerned. I have accordingly considered the Demurrer on the merits and for the reasons set forth hereinabove conclude that the Demurrer should be sustained.

*It is therefore ordered:*

(1) That the defendant's Demurrer dated October 15, 1975, be, and the same is hereby, sustained; and

(2) That the plaintiff shall have twenty (20) days within which to serve an Amended Complaint if, in the light of this holding, new facts can be alleged sufficient to state a cause of action.