754 F.2d 145
 C. Lane MORGAN, d/b/a Morgan Insurance Agency, Appellant,
v.
KEMPER INSURANCE COMPANIES, a/k/a Kemper Insurance Group,
d/b/a Lumbermen's Mutual Insurance Company, American
Motorists Insurance Company, and American Manufacturers
Mutual Insurance Company, Appellee.
 No. 83-1192.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 1, 1984.
Decided Feb. 6, 1985.
 
 Frank S. Holleman, III, Greenville, S.C. (Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., Alexander S. Macaulay, Miley, Macauley, Day & Agnew, Walhalla, S.C., on brief), for appellant.
 Joel H. Smith, Columbia, S.C. (Thornwell F. Sowell, III, Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on brief), for appellee.
 Before HALL, MURNAGHAN and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge.
 
 
 1
 Appellant, C. Lane Morgan (Morgan), is an insurance agent whose authority to write automobile insurance was terminated by respondents: The Kemper Insurance Companies, Kemper Insurance Group, and three insurance companies within the Kemper group, Lumbermen's Mutual Insurance Co. (Lumbermen's) American Motorists Insurance Co. (Motorists), and American Manufacturers Mutual Insurance Co. (Manufacturers). Morgan sued under Sec. 38-37-940(2) of the South Carolina Code of Laws for unlawful termination of his agency agreement. The trial judge granted respondents' motions for summary judgment, and Morgan appealed. We affirm.
 
 
 2
 * On April 8, 1974, appellant entered into a Preferred Agency Agreement permitting him to write property and casualty insurance for Lumbermen's and Motorists. This agreement included the following provision:
 
 AGREEMENT WITH MORE THAN ONE COMPANY
 
 3
 14. If this Agreement is executed by more than one Company, then it shall constitute a separate and independent agreement by and between Agent and each such Company. Default in one agreement shall constitute default in all.
 
 
 4
 On May 21, 1981, Morgan, Lumbermen's, Motorists, and Manufacturers signed an endorsement to the agreement amending it to allow Morgan to write property and casualty insurance, including automobile insurance, for Manufacturers. The endorsement changed none of the provisions of the original agreement.
 
 
 5
 In 1974, the South Carolina legislature passed S.C. Act 1177. This Act requires all automobile insurance agents to accept automobile insurance applications from high risk drivers at set premium rates. As Morgan wrote more of this type of insurance he produced higher and higher loss ratios for Lumbermen's and Motorists. Having written no automobile insurance for Manufacturers he produced no losses for it. In early August 1981, the "Kemper Group" wrote a letter to Morgan expressing concern over these losses. By the end of August the Personal Lines Underwriting Manager for these three companies decided to terminate Morgan's authority to write automobile insurance for the three companies. On September 17, 1981, the Marketing Manager for the Kemper Group officially notified Morgan of this decision.
 
 
 6
 Although these are three separate companies, they are in some respects treated as one. Morgan often made checks payable to "Kemper Group" or "Kemper Insurance Companies." These checks included payments to all three companies. Kemper stationery was marked with the Kemper group insignia. All correspondence to Morgan regarding his loss ratios discussed his total Kemper business without segregating his sales for specific companies. The combined premiums for the three companies were distributed among them, with losses and expenses prorated over the three companies.
 
 
 7
 These three companies also used the same application form for insurance. The application form listed all of the companies within the Kemper Group. An agent, such as Morgan, was free to put an "X" in the box for whichever company he chose for the insurance. Nevertheless, from May 21, 1981, until September 21, 1981, the date of cancellation, and despite the ease of designating any one of the three insurance companies, Morgan wrote no automobile insurance for Manufacturers.
 
 
 8
 Morgan brought suit against respondents, alleging that they violated Sec. 38-37-940(2) of the South Carolina Code of Laws and also South Carolina's Unfair Trade Practices Act because of the violation of Sec. 38-37-940(2). Both sides moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The trial judge granted respondents' motions for summary judgment, holding that (1) Morgan could not sue Manufacturers because Morgan had sold no automobile insurance for that company and (2) Morgan could not sue Lumbermen's or Motorists because their agreements with appellant were originally signed in April 1974, before the effective date of the Act.
 
 II
 
 9
 The first issue on appeal is whether Morgan may sue Manufacturers for the wrongful termination of his authority to write automobile insurance. This private cause of action is based on a violation of Sec. 38-37-940(2) of the South Carolina Code of Laws. That section states:
 
 
 10
 No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility.
 
 
 11
 S.C.Code Ann. Sec. 38-37-940(2) (emphasis added).
 
 
 12
 The South Carolina Supreme Court first recognized a private cause of action for wrongful termination of an agency contract, based on a violation of this section, in G-H Insurance Agency, Inc. v. Travelers Insurance Co., 270 S.C. 147, 241 S.E.2d 534 (1978). The South Carolina Supreme Court specifically found a cause of action for a violation of Sec. 38-37-940(2). See Dixon v. Nationwide Mutual Insurance Co., 281 S.C. 452, 316 S.E.2d 376, 376 (1984).
 
 
 13
 Morgan argues that he can maintain this action against Manufacturers because it violated the preface to Sec. 38-37-940. This preface states, in part:
 
 
 14
 No insurer of automobile insurance shall directly or indirectly by ... imposition or threat of penalty or through any artifice or device whatsoever, ... impose any detriment upon any ... agent for the purpose of avoiding any class or type of automobile insurance risk which the insurer deems it necessary to reinsure in the Facility; nor shall any such ... imposition or threat of penalty in connection with any other line or type of insurance be so tied to automobile insurance as to have a tendency to induce the agent to avoid any such class or type of automobile insurance risk; .... Any act in violation of this section shall constitute an act of unlawful discrimination and unfair competition which, if willful, shall result in the suspension or revocation of the insurer's certificate of authority for not less than six months.
 
 
 15
 S.C.Code Ann. Sec. 38-37-940 (1976).
 
 
 16
 The case law, however, makes it clear that an action for wrongful termination of an agency agreement is found solely under Sec. 38-37-940(2), and not the preface. See, e.g., Insurance Financial Services, Inc. v. The South Carolina Insurance Co., 318 S.E.2d 10, 11 (S.C.1984) (in which Littlejohn, C.J., quotes Sec. 38-37-940(2) and then states that it creates the private cause of action); Dixon, 316 S.E.2d at 576. Furthermore, unlike Sec. 38-37-940(2), the preface contains its own penalties for its violation.
 
 
 17
 Morgan placed no automobile insurance with Manufacturers, and Manufacturers had none of Morgan's automobile insurance to reinsure. Thus, Manufacturers could not have violated Sec. 38-37-940(2) by withdrawing Morgan's authority to write automobile insurance. The trial judge did not err in granting Manufacturers' motion for summary judgment.
 
 II
 
 18
 The second issue on appeal is whether the contract clauses of the South Carolina and United States Constitutions prohibit this action against Lumbermen's and Motorists. Morgan entered into the agreements with these two companies on April 8, 1974, before the effective date of Sec. 38-37-940(2). In Garris v. Hanover Insurance Co., 630 F.2d 1001 (4th Cir.1980), this court held that the retroactive application of the private enforcement provision of this section was an impermissible impairment of the contractual obligations in violation of the contract clause of the United States Constitution.
 
 
 19
 Lumbermen's and Motorists each had a contractual right to terminate their agreements with Morgan. This right existed before Sec. 38-37-940(2) became the law in South Carolina. To allow Morgan to sue them for exercising that right would permit the retroactive application of Sec. 38-37-940(2) and would impair that contractual right. This would violate both the state and federal contract clauses. Garris, 630 F.2d at 1011; G-H Insurance Agency, Inc. v. Continental Insurance Co., 278 S.Ct. 241, 294 S.E.2d 336, 341 (1982) (holding that the retroactive application of this section also violates the contract clause of the South Carolina Constitution). Accordingly, Morgan may not maintain this action against these two companies for wrongful termination of these two agreements.[1]
 
 
 20
 Morgan argues that the effective date of the agreements between Motorists and himself and Lumbermen's and himself changed to May 21, 1981, the date when the endorsement adding Manufacturers was made. This argument is without merit. In effect, Morgan is claiming that there was a novation when Manufacturers was added to the original agreement.
 
 In South Carolina:
 
 21
 A novation is a "mutual agreement between all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor." ... To create a novation, there must be an intention for such, .... The party alleging a novation has the burden of proving such. The circumstances attending the transaction alleged to be a novation must show the intention to substitute a new obligation in place of the existing one.
 
 
 22
 Superior Automobile Insurance Co. v. Maners, 261 S.C. 257, 199 S.E.2d 719, 722 (1973) (citations omitted). The agreement itself indicates that a novation was not intended by respondents: "If this agreement is executed by more than one Company, then it shall constitute a separate and independent agreement by and between Agent and each such Company." (Emphasis added).
 
 
 23
 We have considered Morgan's other arguments and find them to be without merit. The decision of the district court is
 
 
 24
 AFFIRMED.
 
 
 25
 MURNAGHAN, Circuit Judge, dissenting.
 
 
 26
 The majority's conclusion that the holdings in Garris v. Hanover Insurance Company, 630 F.2d 1001 (4th Cir.1980) and G-H Insurance Agency, Inc. v. Continental Insurance Co., 278 S.C. 241, 294 S.E.2d 336 (1982) bar appellant's action against Lumbermen's Mutual Insurance Company ("Lumbermen's") and American Motorists Insurance Company ("Motorists"), considered strictly on their own, is one with which I do not quarrel. The majority's dismissal of appellant's claim against American Manufacturers Mutual Insurance Company ("American Manufacturers"), however, is premised on an unreasonably restrictive construction of the applicable South Carolina statutes, and, therefore, I respectfully dissent.
 
 
 27
 The majority has recognized that the three companies involved in the present action essentially operated as one company. In addition to communicating with Morgan as a group, using common Kemper stationery and forms, the three entities operated pursuant to an inter-company reinsurance agreement. The business written on behalf of any one of the companies was pooled, premiums combined, and losses and expenses prorated. Thus, the high loss ratios occasioned by Morgan pinched more than Motorists and Lumbermen's. The losses proportionately affected American Manufacturers even though in the most formal and technical sense[2] Morgan placed no insurance with it directly.
 
 
 28
 Moreover, for purposes of summary judgment, when inferences must be drawn against the party seeking judgment, see Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co., 381 F.2d 245, 249 (4th Cir.1967), it must be assumed, contrary to the district court's reasoning, that American Manufacturers cancelled its agency agreement because of the insurance written for the pool (insurance which led to losses for all three companies, American Manufacturers specifically included) and because it wanted to avoid having in its portfolio an enhanced volume of high risk insurance following Morgan's cancellation by Lumbermen's and Motorists.
 
 
 29
 Section 38-37-940 of the South Carolina Code provides in pertinent part:
 
 
 30
 No insurer of automobile insurance shall directly or indirectly by offer or promise of reward or imposition or threat of penalty or through any artifice or device whatsoever, confer any benefit upon any agent or impose any detriment upon any such agent for the purpose of avoiding any class or type of automobile insurance risk which the insurer deems it necessary to reinsure in the Facility; nor shall any such offer or promise of reward or imposition or threat of penalty in connection with any other line or type of insurance be so tied to automobile insurance as to have a tendency to induce the agent to avoid any such class or type of automobile insurance risk; nor shall any insurer of automobile insurance provide to agents, directly or indirectly, orally or in writing, any listing of classes or types of automobile insurance risks which it deems necessary to reinsure in the Facility. Any act in violation of this section shall constitute an act of unlawful discrimination and unfair competition which, if willful, shall result in the suspension or revocation of the insurer's certificate of authority for not less than six months. Any agreement made in violation of this section shall be void.
 
 
 31
 * * *
 
 
 32
 * * *
 
 
 33
 (2) No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility. (Emphasis added).
 
 
 34
 We are all in apparent agreement with Morgan's characterization of his relationship with the three companies. The majority, however, concludes that Morgan has no cause of action against American Manufacturers because the statute does not protect an agent unless insurance was directly placed with the insurer. According to the majority's opinion Morgan derives no rights from the prefatory section of the statute, which broadly prohibits insurers from penalizing agents through "any artifice or device," because the case law makes clear that "an action for wrongful termination of an agency agreement is found solely under 38-37-940(2), not the preface." (at 147). The case law, however, is not so obvious. Neither the South Carolina Supreme Court nor, as far as I have been able to determine, any other South Carolina court has addressed the issue of whether an agent whose contract with one insurer has been terminated at the behest of intimately interrelated companies,[3] can bring a cause of action for a wrongful termination even though no insurance formally was placed with the terminating company.[4] Thus, the issue is one of first impression, and the existing case law indicates that, on the facts of the present appeal, the South Carolina Supreme Court would hold that a cause of action does exist.
 
 
 35
 Independent of the statute, there is no question Morgan had a right, at common law, to sue American Manufacturers for breach of the agency agreement. As explained in G-H Insurance Agency, Inc. v. Travelers Insurance Companies, 270 S.C. 147, 241 S.E.2d 534, 536 (1978):
 
 
 36
 The question here is not whether the statute creates a private cause of action for its violation. This action is one for the alleged wrongful and unlawful cancellation of the agency contract, a right existing in G-H, the plaintiff, irrespective of the statute. The statute in question becomes relevant only in determining whether the cancellation was wrongful.
 
 
 37
 There can be no doubt that the cancellation of the agency contract was wrongful if the statutory prohibition against its termination was enacted for the benefit of the agent.
 
 
 38
 Although later cases refer to the agent's suit as an "implied cause of action" under Sec. 38-37-940(2), the court in Dixon v. Nationwide Mutual Insurance Co., 281 S.C. 452, 316 S.E.2d 376, 377 (1984) noted that G-H Insurance Agency, Inc. v. Travelers Insurance Companies has not been modified by any later decision of the court.
 
 
 39
 Reading the statute as a whole I conclude that the act makes it unlawful, authorizing a wrongful termination action, for an insurer directly or indirectly to penalize an agent because of the volume of insurance placed either with it or with sister companies so closely related that they, for present purposes, constitute a single entity. The prefatory language of the statute reveals a determination by the South Carolina legislature to sweep as widely as possible. The statute refers to insurers who penalize an agent "directly or indirectly," by means of "any artifice or device whatsoever," for selling insurance to high risk drivers. Given the breadth of that language, no rational legislative purpose is served by holding, as the majority does, that the private action recognized by the South Carolina Supreme Court in G-H Insurance Agency, Inc. v. Travelers Insurance Companies cannot be maintained against American Manufacturer's because Morgan speaking solely technically and unrealistically[5] placed no automobile insurance directly with it. What is "legalistic" need not be "legal".
 
 
 40
 The majority's only real explanation for rejecting a broader reading of the statute is that the "directly or indirectly" language is incorporated in a section of the statute which contains its own administrative penalty. That argument, I submit, does not withstand analysis. Section 38-37-940(2) is triggered when insurance is placed with an insurer, but there is no reference to insurance being placed "directly" or "indirectly" with the insurer. The majority's statutory construction assumes, without even analyzing the question, that a wrongful termination occurs only when insurance is directly placed with the insurer; however, no such limitation is required by the language of the statute. To the contrary, the legislature, by referring to "direct or indirect" in the preface, has signalled its intent that the statute be given a broad reading. The modifying phrase need not subsequently be repeated. Thus, I conclude that, in the factual context, the legislature intended to protect agents such as Morgan.
 
 
 41
 That then leads to a subsidiary question as to the significance of paragraph 14 of the April 8, 1974 Preferred Agency Agreement. It was on a standard form promulgated by the Kemper Group, and therefore to be construed in Morgan's favor and strictly against the insurers. Williams v. Teran, Inc., 266 S.C. 55, 221 S.E.2d 526, 529 (1976); Whitington v. Ranger Insurance Co., 261 S.C. 582, 201 S.E.2d 620 (1973). That paragraph, while asserting on the one hand that the agreement with one of the companies was separate and independent of the others immediately negated that self-serving observation when it made a default in one agreement a default in all agreements. In May 1981 American Manufacturers became a party to that agreement. Its breach, when it wrongfully cancelled Morgan's agency, constituted in September 1981 a default by Lumbermen's and Motorists as well. The default was brought about by reason of 1981 contract language adding American Manufacturers as a party, not by the language of the 1974 agreement, standing alone, which predated the enactment of Sec. 38-37-940(2). A default by American Manufacturers could not be a default prior to May 21, 1981, for the contract concerned actions of American Manufacturers only from and after that date. Hence Garris and G-H Insurance Agency, Inc. v. Continental Insurance Co. do not apply, for there is no retroactive application of Sec. 38-37-940(2).
 
 
 42
 So viewed, the cause of action brought by Morgan furthers the statutory purpose behind 38-37-940(2), which, as held in G-H Insurance Agency, Inc. v. Travelers Insurance Companies was enacted for the benefit of the agent. I would, accordingly, hold that Morgan has a cause of action initially against American Manufacturers and secondarily against Lumbermen's and Motorists for wrongfully cancelling each company's agency agreement "primarily because of the volume of automobile insurance placed with it." Default by one was the default of all.
 
 
 
 [1]
 At oral argument a question arose concerning whether the contract clause prohibits this action because the agreements were terminated on account of business written after the effective date of the statute. The specific holding in Garris answers that question:
 We hold that to the extent [Sec. 38-37-940(2) ] confers a private cause of action for termination of agency contracts entered into before its enactment, it violates the Contract Clause.
 Garris, 630 F.2d at 1003 (emphasis added).
 
 
 [2]
 Formal and technical in that there was no substance to the differentiation between the three companies
 
 
 [3]
 As the majority has pointed out, the three companies "are in some respects treated as one." In particular, "The combined premiums for the three companies were distributed among them, with losses and expenses prorated over the three companies." at 146
 
 
 [4]
 The formality is transparently paper thin. The agent marked on a form in common usage by all three insurers an X against the name of one of the three companies. But which was marked made absolutely no difference. The exact same proration of premiums, losses and expenses ensued whether the X marked the spot of American Manufacturers, Lumbermen's or Motorists
 
 
 [5]
 What is real for the insurance companies is the premium flow, and American Manufacturers fully participated in the premiums on all policies placed by Morgan with the Kemper Insurance Group