20814

David E. ROWELL, d/b/a Rowell Insurance Agency, Appellant, v. HARLEYSVILLE MUTUAL INSURANCE COMPANY, Respondent.

(250 S. E. (2d) 111)

*David M. Ratchford* and *Donald E. Jonas* of *Ratchford & Cooper,* Columbia and *Samuel H. Altman* and *J. Graham Sturgis, Jr.* of *Altman & Fuller,* Charleston, *for appellant.*

*Charles H. Gibbs* and *John P. Linton,* both of *Sinkler, Gibbs & Simons,* Charleston, *for respondent.*

November 21, 1978.

LEWIS, Chief Justice:

Appellant was an insurance agent of respondent under a written contract which provided for its termination by either party, without cause, upon sixty days written notice to the other. Subsequent to the execution of the agency contract, the General Assembly adopted Act No. 1177 of the 1974 Acts of the General Assembly, relating to automobile liability insurance, which contained a provision prohibiting the cancellation of insurance agency contracts by an insurer because of the volume of automobile insurance placed with it by its agent on account of the statutory mandate for coverage. Respondent's effort to terminate its agency contract with appellant, allegedly in violation of the statutory prohibition, gave rise to the present litigation for injunctive relief to prevent such cancellation.

The sole issue presented is whether the application of the statutory prohibition against cancellation of insurance agency contracts, as contained in Act No. 1177, operates as an unconstitutional impairment of the existing contractual right to cancel the agency agreement between the parties.

Appellant contended that the provisions of Act No. 1177, prohibiting the cancellation of insurance agency agreements, precluded respondent from terminating the agency agreement in this case; while respondent contended, to the contrary, that the application of the statutory prohibition against cancellation operated as an unconstitutional impairment of the parties' existing contractual rights to terminate their agency agreement. The material facts are not in dispute.

The General Assembly, in order to better provide for the automobile liability insurance needs of the people of this State, enacted the South Carolina Automobile Reparation Reform Act of 1974 (Act No. 1177, 1974 Acts of the General Assembly, 58 Stat. 2718, currently codified in Section 38-37-10 *et seq.* of the 1976 Code of Laws). It was based upon the following unchallenged legislative findings contained in Section 1 of Article II of Section 3 thereof:

"The General Assembly hereby finds and declares that automobile insurance has become a legal and practical necessity for individuals; but notwithstanding the necessity for such insurance such individuals are denied coverage on a voluntary basis through rejection, cancellation, or nonrenewal of automobile insurance arbitrarily, capriciously, and without objective reasons, as a result of which, heretofore, intolerable numbers of such risks have been consigned to the inferior coverages, high rates, unfair discriminations and other injustices of the Assigned Risk plan and other residual risk insurance markets."

The general legislative purpose in the enactment of the statute is now set forth in Code Section 38-37-110(1) as follows:

In keeping with its intention to effect a complete reform of automobile insurance and insurance practices in South Carolina as the same pertain to individuals, the General Assembly declares that the purposes of this article are:

(1) To provide that every such automobile insurance risk which is insurable on the basis of the criteria established

herein shall be entitled to automobile insurance from the automobile insurance insurer of the applicant's choice on the basis of the same rates, . . . provided by such insurer to all other applicants or insureds falling within . . . the applicable risk and territorial classification plan promulgated by the Commissioner with the approval of the Commission.

Therefore, one of the basic purposes for the enactment of Act No. 1177 was to provide a system under which all drivers in South Carolina would be able to obtain automobile insurance without discrimination among applicants for such insurance. The statute accomplishes this purpose by placing upon agents and insurers the mandatory duty to accept all insurable risks, Code Sections 38-37-310 and 38-37-920; and through Section 38-37-940(2) which provides:

(2) No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility.

In determining the effect of the foregoing statutory limitation on the right to cancel agency agreements, we must keep in mind (1) the status of respondent's operation in this State, (2) the public interests involved, and (3) the purposes to be accomplished by the enactment of the prohibition. When viewed in the light of these considerations, it clearly appears that respondent possesses no vested contract rights subject to constitutional protection in this case.

> While it is generally true that vested rights under a contract executed prior to a legislative enactment are subject to constitutional protection, no such constitutional protection can be claimed where vested rights are not involved.

> The general rule is well settled that the right to contract is not without limitations, but is subject to reasonable regulations in order to protect an overriding

public interest. 16 Am. Jur. (2d), Constitutional Law, Section 375.

Respondent was licensed by the State of South Carolina to sell insurance after it qualified under the laws and regulations of the State. This license, however, granted no vested right to respondent to sell insurance in this State, but was issued by the State and accepted by respondent subject to the following reservations set forth in Code Section 38-5-70: Every insurance company shall, as a condition for the privilege of entering into and doing business in this State, pay all taxes and *perform all duties now or hereafter prescribed by law*. (Emphasis added).

The fact that the business of insurance serves a vital public interest cannot be questioned. In fact, the present statute contains the legislative finding that "automobile insurance has become a legal and practical necessity for individuals."

Under these facts, respondent entered into its contractual relationship with appellant, charged with knowledge that its privilege to operate in South Carolina was subject to legislative change when such changes were necessary to serve the public interests. This principle was stated in *Dantzler v. Callison*, 230 S. C. 75, 94 S. E. (2d) 177:

No person can acquire a vested right to continue, when once licensed, in a business, trade or profession which is subject to legislative control and regulation under the police power, as regulations prescribed for such may be changed or modified by the legislature, in the public interest, without subjecting the action to the charge of interfering with contract or vested rights.

The legislature is vested with a broad discretion, in the exercise of its regulatory control of businesses affected with a public interest, to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. 16 Am. Jur. (2d), Constitutional Law, Section 320.

The legislature has determined that the public interests require that all drivers secure automobile insurance and that such insurance must be made available by insurers, including respondent, on a non-discriminatory basis. These are areas of proper legislative concern and regulation, and the validity of the legislative judgment on these matters is not questioned. Only the regulatory method adopted to accomplish such purpose is challenged in this case.

As previously shown, the insurer is prohibited from cancelling the agency contract either because of the volume of automobile insurance placed with it by the agent or because of the amount of the agent's business which the insurer deems it necessary to reinsure. It is undisputed that cancellation of an agent's contract because of the foregoing reasons would materially circumvent the legislative purpose to make available on a non-discriminatory basis automobile insurance to all drivers from the insurer of the applicant's choice.

The present restriction on the right to cancel the agency contract does not affect contracts between respondent and its policyholders, but operates solely on respondent's relationship with its agent in the sale of insurance, an area peculiarly within the State's regulatory power. The statutory restriction is limited solely to the evil sought to be remedied. In fact, it is now apparent that the General Assembly correctly concluded that its purpose to assure automobile insurance coverage to all drivers might be thwarted by an insurer through the simple expedient of cancelling an agent's contract because of the volume of business placed with it by that agent in compliance with the mandate of the statute. The prohibition against cancellation in no way affected any legal right to respondent to cancel appellant's agency contract. Its only effect is to prevent retaliation by respondent or other insurers against those agents who complied with the law.

The General Assembly determined that the public interests required the far reaching reforms in automobile insurance coverage enacted under the provisions of Act No. 1177.

These reforms were made applicable to all agents and insurers. In order to assure compliance with the terms of the statute, certain enforcement provisions were enacted, among them the present prohibition against cancellation of agency contracts. The determination of what enforcement measures were necessary for the protection of the interests of the public rested within the broad discretion of the General Assembly. This record is devoid of any showing that the regulations adopted were not reasonable.

The argument that "the prohibition against termination of agency contracts was not necessary to achieve the public purpose of the Act," relying upon the decision in *G-H Insurance Agency, Inc. v. The Travelers Insurance Co.,* 270 S. C. 147, 241 S. E. (2d) 534, and that the inclusion of such prohibition served no public purpose, is without merit. In that case, we held that an independent insurance agent possessed a private cause of action for the wrongful termination of its agency relationship. In so holding, we pointed out that the adoption of the provision against cancellation was not limited in its purpose and application to the benefit of the public to the exclusion of insurance agents, recognizing the dual aspect of the protection afforded by such provision. Our holding in the *G-H Insurance Agency case,* that the provision prohibiting cancellation of agency contracts was not necessary to enforce compliance, renders such provision no less a part of the system adopted by the legislature to secure compliance with the provisions of Act No. 1177. The presence of other adequate enforcement provisions affords no ground for this Court to hold that the inclusion of the cancellation provision served no public purpose.

Since respondent had no vested right to sell insurance in this State, the reasonable statutory measures adopted to enforce compliance with the laws regulating the sale of insurance violated no constitutional rights of respondent.

The lower court was, therefore, in error in holding that Act No. 1177 impaired any contractual rights of respondent.

The judgment is accordingly reversed and the cause remanded.

RHODES and GREGEORY, JJ., concur.

LITTLEJOHN and NESS, Justices (dissenting):

We respectfully dissent and would affirm the trial court order.

Rowell and Harleysville entered into a binding agreement establishing their rights and duties in October of 1973. As a valid property right and asset, this contract was protected by the impairment clauses of both the state and federal constitutions.

We readily recognize the right of the legislature to regulate certain industries in the public interest; however, this authority is confined to prospective contracts and does not empower the legislature to alter existing contracts. Contractual rights, once solemnly bargained for and attained, should not be prey to legislative recision.

Many courts have examined and interpreted the impairment of contract limitation. As stated by the Connecticut Court in *O'Connor v. Hartford Accident & Indemnity Co.,* 115 A. 484, 486 (1921):

"The Legislature may regulate the remedy and the methods of procedure under a past as well as a future contract, but it cannot impose new restrictions upon the enforcement of a past contract, so as materially to lessen its value and benefit to either party."

There is nothing in Act 1177 to evince an intent by the legislature to disturb existing contracts. In any event, legislative law must succumb to the superiority of constitutional law, and the clear import of the impairment of contracts provision is that an individual's property right, acquired in the form of a contract, will not be subject to alteration, cancellation or enlargement by the legislature.

In *Federal Land Bank of Columbia v. Garrison, et al.,* 185 S. C. 255, 193 S. E. 308 (1937), the Court struck down a statute which attempted to circumscribe the right of a lending institution to foreclose a mortgage. It was argued that the legislature, as a valid exercise of the police power, could enact appropriate legislation to prevent lenders from receiving a windfall. The court rejected the arguments that the police power could be exercised to abrogate existing contractual rights. Likewise rejected was the claim that the U. S. Supreme Court decision of *Home Building & Loan Association v. Blaisdell,* 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413 (1934) created any change in constitutional doctrine. The *Blaisdell* opinion clearly has not recast the S. C. Constitution's prohibition against impairment of contractual rights.[1]

More recently in *Pulliam v. Doe,* 246 S. C. 106, 142 S. E. (2d) 861 (1965), this Court considered the power of the legislature to regulate the insurance industry. In *Pulliam,* the plaintiff sought recovery under his uninsured motorist coverage as the result of an accident where there was no physical contact between the vehicles. During the coverage period and prior to the accident, the legislature amended the uninsured motorist statute to require physical contact was a condition precedent to recovery. The Court in *Pulliam* held the statutory amendment could not be applied to alter the terms of coverage of a pre-existing contract without contravening the prohibitions of the impairment of contracts clause. See also, *Travelers Ins. Co. v. Allstate Ins. Co., et al.,* 249 S. C. 592, 155 S. E. (2d) 591 (1967); *Henderson v. Evans, et al.,* 268 S. C. 127, 232 S. E. (2d) 331 (1977).

The facts in this appeal are even more compelling. The trial judge correctly held that the right to terminate without cause was a bargained for right that formed the basis for the original consent. Additionally, he found that respondent

---

[1] Also see Comment of Professoar Wright, author of the Contract Clause of the Constitution, page 119.

would continue to sustain enormous losses unless it exercised its right to terminate. Hence, he reasoned that prohibiting the termination destroyed the value of the original contract.

Moreover, we do not believe Act 1177 was primarily designated to subserve a public purpose. In *G-H Ins. Agency, Inc. v. The Travelers Ins. Co.,* 270 S. C. 147, 241 S. E. (2d) 534 (1978), we held that the public purpose of the act was "to assure non-discriminatory automobile insurance coverage." Id., 241 S. E. (2d) at page 536. This purpose is achieved prospectively by comprehensive reform in the premium rating system, not retrospectively by interfering with existing contracts. Additionally, statutory penalties provided by the Act authorize the Insurance Commissioner to suspend or revoke an insurance company's certificate for not less than six months for violation of the Act. The primary *public* purpose of the Act, to assure non-discriminatory automobile insurance coverage, can be achieved through enforcement provisions existing in the statute. Accordingly, interference with the right of contract cannot be justified by asserting Act 1177 is in the public interest. *Treigle v. Acme Homestead Association,* 27 U. S. 189, 196, 56 S. Ct. 408, 80 L. Ed. 575 (1936).

The two most recent cases of the U. S. Supreme Court, *U. S. Trust Co. v. New Jersey,* 431 U. S. 1, 97 S. Ct. 1505, 52 L. Ed. (2d) 92 (1978), and *Allied Structural Steel Company v. Spannaus, et al.,* ... U. S. ..., 98 S. Ct. 2716, 57 L. Ed. (2d) 727 (1978), hold, "[l]egislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." Id. at 22, 97 S. Ct. at 1518.

Act 1177 nullifies express terms of respondent's contractual obligations and imposes an unexpected liability in disabling amounts. It cannot be applied to alter preexisting

contracts without violating the impairment of contract clause of both constitutions.

We would affirm judgment of the trial court.