21765

G-H INSURANCE AGENCY, INC., Respondent, v.
CONTINENTAL INSURANCE COMPANY, Appellant.

(294 S. E. (2d) 336)

*Elaine H. Fowler,* of *Turner, Padgett, Graham & Laney,* Columbia, *for appellant.*

*Donald E. Jonas* and *David M. Ratchford,* of *Ratchford, Cooper & Jonas,* Columbia, *for respondent.*

July 22, 1982.

LITTLEJOHN, Justice:

The appeal herein arises from an order granting the Plaintiff's Motion for Summary Judgment against the Defendant on the issue of liability.

On September 15, 1972, the Plaintiff-Respondent, G-H Insurance Agency, Inc. (The Agency) entered into a contract with the Defendant-Appellant, Continental Insurance Company (Insurance Company), under the terms of which The Agency would receive and accept proposals for insurance to be written by the Insurance Company. It was a typical agreement, whereby a local agency procures automobile liability insurance and other coverages for an insurance company.

Included in the agreement was the following:

> This agreement ... may be terminated by either party at any time by written notice to the other.

Some two years later, in 1974, the General Assembly of South Carolina enacted a statute, Act 1177, referred to as The South Carolina Automobile Reparation Reformation Act of 1974. It was designed to regulate the sale of automobile insurance. It is codified as § 38-37-10, *et seq.*, of *The Code of Laws of South Carolina* (1976). The only section under attack in this case is § 38-37-940 (2), which reads as follows:

> No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility.

Act 1177 effected sweeping changes in the sale of automobile insurance in South Carolina. Before the Act, insurance was sold on a voluntary market with an assigned risk plan for bad drivers unable to obtain insurance. The Act provided that no insurer could differentiate between drivers in the rates charged except on the basis of criteria set by the Insurance Commissioner, effectively requiring each insurer to establish uniform rate schedules. Neither insurers nor their agents

could refuse an application by any licensed driver for automobile insurance at these set rates. Some of the risks that insurers were statutorily required to accept could, in fact, be avoided, as each insurer could place up to 35 per cent of its book of business in a reinsurance facility in which all insurers participated.

On September 5, 1975, the Insurance Company, in keeping with the provision quoted above, cancelled the contract with The Agency.

This action was commenced on September 25, 1975. The Agency, in its Complaint, sought to enjoin the termination of the contract and to recover damages from the Insurance Company for the termination, claiming that the cancellation of the contract was in violation of The Act. After hearing on a Rule to Show Cause, the trial court, on December 3, 1975, issued its temporary-relief order requiring the Insurance Company to rescind the cancellation.

The Insurance Company then demurred to the Complaint. On March 3, 1977, the trial court sustained the demurrer. On April 4, 1978, this Court summarily reversed the order which sustained the demurrer, following the decision (issued on January 19, 1978) in the case of *G-H Insurance Company, Inc. v. The Travelers Insurance Company*, 270 S. C. 147, 241 S. E. (2d) 534 (1978). Thereafter, the Insurance Company served its Answer, in which it denied that its cancellation action constituted a violation of The Act and in which it raised the defense, among others, that The Act is unconstitutional as an impairment of contractual relationships as protected by Article I, § 4 of the Constitution of South Carolina, and Article I, § 10 of the Constitution of the United States. Those two sections read as follows:

S. C. Constitution, Article I
§ 4. No ... law impairing the obligation of contracts, ... shall be passed, ...

U. S. Constitution, Article I
§ 10. No state shall ... pass any ... law impairing the obligation of contracts, ...

The Answer also alleged a violation of both the Fifth and Fourteenth Amendments to the Constitution of the United States. They read:

U. S. Constitution, Amendment V

No person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation.

U. S. Constitution, Amendment XIV

§ 1. ... nor shall any state deprive any person of ... property, without due process of law; ....

In January, 1979, The Agency moved for summary judgment, asserting that the cancellation was, as a matter of law, in violation of the statute and that no genuine issue of material fact existed as to the reason for the cancellation, requesting that summary judgment as to only liability be granted, leaving the issue of amount of damage to be determined. In granting the motion, the judge ignored the contract clause and due process clause defenses and, at least by implication, held the statute constitutional, presumably relying on *G-H Insurance Company, Inc., supra* and *Rowell, infra.*

One of the exceptions submitted to the Court is as follows:

3. That the Court erred in concluding that Plaintiff was entitled to judgment as a matter of law, the error being that the application of the provisions of Act 1177 within the circumstances of this case works an unconstitutional impairment of the contractual relationship between the Plaintiff and Defendant since the agency agreement, in existence prior to enactment of Act 1177, unequivocally permitted termination at will upon written notice.

Incident to the appeal, the Insurance Company requested and was granted, under Rule 8, § 10 of this Court, the right to argue against and to seek reversal of *Rowell v. Harleyville Mutual Insurance Company*, 272 S. C. 108, 250 S. E. (2d) 111 (1978), wherein this Court by a 3-2 vote sustained the constitutionality of The Act. The request was granted and the constitutional issues have been fully briefed and orally argued.

The Agency relies largely upon *Rowell* to sustain the trial court. The Insurance Company cites *Garris v. Hanover Insurance Company*, 630 F. (2d) 1001 (1980); *Pulliam v. Doe*, 246 S. C. 106, 142 S. E. (2d) 861 (1965); *U. S. Trust Company v. New Jersey*, 431 U. S 1, 97 S. Ct. 1505, 52 L. Ed. (2d) 92 (1978); and

*Allied Structural Steel Company v. Spannaus, et al.*, 438 U. S. 234, 98 S. Ct. 2716, 57 L. Ed. (2d) 727 (1978).

We accept the proposition as argued by The Agency that automobile insurance is subject to much regulation by the General Assembly. Contracts generally are subject to legislative regulation prospectively. The Insurance Company concedes that insurance agreements such as that at issue entered into after the effective date of The Act are subject to and controlled by the statute. The sole contention of the Insurance Company is that the statute cannot constitutionally impair those agency agreements which were in existence at the time The Act was passed. The constitutional issue is, therefore, narrowed such that this Court must determine whether the General Assembly may change the constitutional rights and thereby the property rights of the parties acquired under the agreement of September 15, 1972.

The contract here involved was an important property right. The parties had the right to enter or not to enter into the agreement and to spell out the provisions. At the time of the agreement there was no law in South Carolina relative to the cancellation of such agreements with which the parties should have been concerned. Certainly, they had no reason to anticipate that such a statute might be imposed. The right of each party to cancel the agreement assured the Insurance Company that an unprofitable relationship could be terminated without expense or delay. The Insurance Company's reliance upon the right to cancellation was obviously an important aspect of the relationship. The challenged section of The Act severely impaired the contractual right.

It is inescapable that the differences between doing business under the old law and under the new law are substantial. There is no right incident to contracting more important than that of selecting the person with whom a binding agreement will be made. Equally important was the right to receive a higher premium for assuming an undesirable, substandard risk. Under the new law, both the agent and the insurance company are denied the right to choose those persons with whom business will be conducted; they also lose the advantage of higher premiums in substandard risks. The effect of the new Act is to say to an insurance company: "You must insure all drivers in a category at a premium the Insurance Commissioner approves."

While the opinion in the case of *G-H Insurance Agency, Inc., supra,* which construed The Act as creating a cause of action, reasons that the statute is for the benefit of the public, it asserts:

> The statutory prohibition against termination of agency agreements was imposed, therefore, *largely* for the benefit of the insurance agents; .... (Emphasis added.)

We have no difficulty in concluding that the contractual right asserted is of sufficient magnitude and its impairment of sufficient significance to require constitutional balancing against the state's police power, and that the impairment was not ameliorated by any special conditions effecting the law's applicability. We now turn to the more difficult issue of whether the challenged legislation is upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption. Stated another way, the question is: Have the limits imposed by the contract clauses upon exercise of the state's otherwise legitimate police power been exceeded?

The mandate of the state and federal constitutions relating to impairment of contracts is basically the same. This Court must construe our own constitution. The construction of the Constitution of the United States is, of course, for the federal courts in the last analysis. We are of the opinion that in *Rowell, supra,* this Court gave less than full consideration to the case of *Allied Structural Steel Company, Inc.* That case, as well as *U. S. Trust Company, Inc.,* sets out the circumstances under which a state may, under its police powers, interfere with contractual relationships antedating an act of a Legislature. Interference is tolerated usually temporarily and to a limited degree, provided the encroachment is for the good of the public and is both reasonable and necessary. These two cases, in redefining the parameters of the contract clause protection in the context of contemporary constitutional law, acknowledge that states must possess broad powers to adopt regulatory measures in the furtherance of public interest even if the result will, on occasion, be the impairment of private contracts. The police power is, however, ultimately subject to scrutiny under the contract clauses and the legislation must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption.

The fact that § 38-37-940(2) is included in a comprehensive package of legislation designed to make insurance available to all qualified drivers on a nondiscriminatory basis does not eliminate the necessity of our examining this section on its own merits to determine if its directive is reasonable and necessary to accomplish a public purpose. The preamble to The Act, including the findings, are to be considered but are not controlling.

After recognizing that the Contract Clause of the United States Constitution does not prevent a state from exercising police powers necessary for the general good of the people, Mr. Justice Stewart, speaking for the Supreme Court, in *Allied Structural Steel Company, Inc.*, indicated the appropriate considerations to be used in determining the issues of reasonableness and necessity:

> If the Contract Clause is to retain any meaning at all, however, it must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power. The existence and nature of those limits were clearly indicated in a series of cases in this Court arising from the efforts of the States to deal with the unprecedented emergencies brought on by the severe economic depression of the early 1930's.
>
> In *Home Building & Loan Assn. v. Blaisdell*, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, the Court upheld against a Contract Clause attack a mortgage moratorium law that Minnesota had enacted to provide relief for homeowners threatened with foreclosure. Although the legislation conflicted directly with lenders' contractual foreclosure rights, the Court there acknowledged that, despite the Contract Clause, the State retain residual authority to enact laws "to safeguard the vital interests of [their] people." *Id.*, at 434, 54 S. Ct. at 239. In upholding the state mortgage moratorium law, the Court found five factors significant. First, the state legislature had declared in the Act itself that an emergency need for the protection of homeowners existed. *Id.*, at 444, 54 S. Ct., at 242. Second, the state law was enacted to protect a basic societal interest, not a favored group. *Id.*, at 445, 54 S. Ct., at 242. Third, the relief was appropriately tailored to the emer-

gency that it was designed to meet. *Ibid.* Fourth, the imposed conditions were reasonable. *Id.*, at 445-447, 54 S. Ct., at 242-243. And, finally, the legislation was limited to the duration of the emergency. *Id.*, at 447, 54 S. Ct., at 243.

The *Blaisdell* opinion thus clearly implied that if the Minnesota moratorium legislation had not possessed the characteristics attributed to it by the Court, it would have been invalid under the Contract Clause of the Constitution. These implications were given concrete force in three cases that followed closely in *Blaisdell's* wake.

It should have been patent at the time of The Act, and experience now reveals beyond question, that the provision in contest here was not necessary to the accomplishment of the overall purpose of The Act. The impact of the provision was traumatic to some agents and insurance companies. There was no provision for gradual application or a grace period. No opportunity was given to renegotiate agency contracts. The impact of the proscription was immediate, irrevocable and without limit as to time.

It is common knowledge that certain agents and the companies they represented handled a lion's share of the assigned-risk substandard liability coverages, for which they received additional premium. The trial judge, in his order, found as an uncontested fact: "That the majority of the personal lines automobile business being written by G-H Insurance Agency prior to 1974 was categorized as 'sub-standard' business which was written at a higher premium rate than 'standard' business. If all of this substandard coverage was forced upon G-H and Continental, the result would be understandably devastating.

We agree with the Fourth Circuit Court of Appeals, which said, in construing this same section, in *Garris, supra:*

> Our conclusion . . . is that the predominant purpose of the challenged provision was to protect the private interests of affected insurance agents rather than any broader societal interest; and that its essential features were not in any event reasonably related to the public purpose asserted for Act 1177 by the legislature.

*Garris* was decided after our opinion in *Rowell*. That Court has now determined that the section in contest is in violation of the Constitution of the United States. Having reviewed our own decision, as permitted by Rule 8, Section 10, we now conclude that the interpretation set forth in *Garris* is appropriate and correct as relates to not only the Constitution of South Carolina but the Constitution of the United States, both of which we are sworn to uphold.

We, therefore, overrule our own opinion, interpretation and construction as set forth in *Rowell*. The lower court, in granting summary judgment, obviously relied upon *Rowell*. Such is understandable. It certainly had no way of anticipating that this Court would grant the right to attack this opinion, and, ultimately, overrule it.

Our interpretation and construction herein requires reversal of the Order granting summary judgment. The impairment clause defense must be honored.

The question of whether the Insurance Company, in the light of our ruling, should have a summary judgment is not a question now before us. Such may be pursued on remand with the trial court taking into consideration the fact that we have now held the contested section, 38-37-940(2), unconstitutional as an impairment of contractual rights under both the Constitution of South Carolina and the Constitution of the United States. The section is clearly severable and our ruling does not effect any other provisions of The Act.

It becomes unnecessary for us to rule upon the other issues submitted to the Court.

It necessarily follows that no cause of action involving a contract entered into before the effective date of The Act may be predicated upon the holding of this Court in the case of *G-H Insurance Agency Inc. v. Travelers Insurance Company, supra.*

The Order appealed from is reversed and remanded for proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

Ness and Harwell, JJ., concur.

Lewis, C. J., and Gregory, J., dissent.

Lewis, Chief Justice (dissenting):

The majority reverses the judgment of the trial court by raising the constitutional issue on its own motion, without affording the respondent an opportunity to be heard in the lower court on the factual and legal issues involved in a determination of the constitutionality of Act 1177 of the 1974 Acts of the General Assembly. Settled appellate procedure dictates that respondent be given the opportunity, as it has requested, to be so heard. The constitutional issue raised and considered by the majority was decided by this Court in *Rowell v. Harleyville Mutual Insurance Company*, 272 S. C. 108, 250 S. E. (2d) 111. No fact or circumstances has been presented, or even intimated, which would require reconsideration of *Rowell* without affording to the litigants full opportunity to address the underlying factual issues and principles which may affect whether a constitutional issue exists in this case and, if so, whether a proper application of the statute violates any constitutional principle. I would accordingly reverse the judgment under appeal and remand to the lower court for a de novo determination of the issues, including any constitutional question presented.

If the case is not reversed and remanded, as proposed hereinabove, I would hold that the constitutional issue is controlled by the prior decision of this Court in *Rowell*, arguments advanced in the dissent in *Rowell*, finding comfort in the subsequent equally unpersuasive opinion in *Garris v. Hanover Insurance Company*, 630 F. (2d) 1001.

GREGORY, J., concurs.