Wesley E. DIXON, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company and Nationwide Property and Casualty Company, Appellees.

Wesley E. DIXON, Appellee,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company and Nationwide Property and Casualty Company, Appellants.

James Lee BECKHAM, formerly d/b/a Jim Beckham Insurance Company; Jasper N. Watson, Jr., Appellees,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Nationwide Mutual Fire Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Company, and Horace Mann Insurance Company, Horace Mann Life Insurance Company, and Educators Marketing Services Corporation, Appellants.

Nos. 84-2364(L), 84-2365 and 85-1106.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1985.

Decided Feb. 28, 1986.

Rehearing and Rehearing In Banc Denied March 25, 1986.

---

Charles F. Cooper, II (David M. Ratchford; Ratchford & Cooper, Columbia, S.C., on brief), for appellant/cross-appellee in 84–2364, 83–2465 and for appellees in 85–1106.

Thornwell F. Sowell, III and R. Bruce Shaw (Joel H. Smith; Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on

brief), for appellees/cross-appellants in 84–2364, 84–2365 and for appellants in 85–1106.

Clinch Heyward Belser; Charles E. Baker; Belser, Baker, Barwick, Ravenel, Toal & Bender, Columbia, S.C., on brief, for appellants in 85–1106.

Benjamin A. Johnson; Roddey, Carpenter & White, Rock Hill, S.C., Brooks Goldsmith; Thomas, Goldsmith, Folks & Hodges, Lancaster, S.C., on brief for appellees in 85–1106.

Before PHILLIPS and SNEEDEN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

SNEEDEN, Circuit Judge:

In this case we are asked to interpret a South Carolina insurance statute. We must also decide whether the statute is unconstitutional as an invalid exercise of the state's police power when applied to contracts arising after the statute's effective date.

The statute in question, section 38–37–940(2)[1] of the South Carolina Code, forbids automobile insurers to cancel an agent's contract primarily because of the volume of car insurance the agent places with it as a result of a statutory coverage mandate or because of the amount of the agent's car insurance business the insurer has placed in the South Carolina Reinsurance Facility.[2] The statute was part of the South Carolina

Automobile Reparation Reform Act ("Act 1177"),[3] a broad reform of the state's insurance laws which featured mandatory insurance coverage and a uniform rate structure.

In these consolidated appeals, insurance agents who were fired brought wrongful termination suits under section 38–37–940(2).[4] The agents contend a trial judge erred in refusing to instruct the jury that it is illegal in South Carolina to fire an agent for unprofitability that chiefly stems from the volume of auto insurance written to comply with statutory coverage mandates or because of the amount of the agent's business that must be placed in the reinsurance facility. The insurance companies have appealed the lower courts' determination that section 38–37–940(2) is constitutional as applied to contracts arising after the effective date of Act 1177.

After reviewing all the evidence and the arguments of the parties, this court concludes that the rulings of the lower courts were correct. Refusal to give the requested jury charge was not error. Nor did the district courts err in concluding that section 38–37–940(2), as applied, was constitutional. We therefore affirm the decisions below.

## I. FACTS

Since this is a consolidated appeal, the facts of the several cases will be developed separately.

---

**1.** Section 38–37–940 states in pertinent part:

No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility.

S.C.Code Ann. § 38–37–940(2) (Law.Co-op. 1976).

**2.** The reinsurance facility is the unincorporated, nonprofit legal entity created by statute to reinsure high-risk policies of automobile insurance. S.C.Code Ann. § 38–37–10 (Law.Co-op.1976). Insurance companies are permitted to cede high-risk business to the reinsurance facility.

**3.** For a description of the sweeping changes in South Carolina's insurance industry brought by the adoption of Act 1177, see *Garris v. Hanover Ins. Co.*, 630 F.2d 1001, 1003 (4th Cir.1980).

**4.** The South Carolina Supreme Court has recognized a private action for the wrongful termination of an insurance agency agreement. *See G–H Insurance Agency, Inc. v. Travelers Insurance Co.*, 270 S.C. 147, 241 S.E.2d 534 (1978). However, the court has ruled that section 38–37–940(2) may not be applied to a contract entered into before the statute's effective date. *See G–H Insurance Agency, Inc. v. Continental Insurance Co.*, 278 S.C. 241, 294 S.E.2d 336 (1982).

## A. *Dixon v. Nationwide*

Wesley Dixon was employed as an agent for Nationwide Mutual Insurance Company ("Nationwide") from 1962 until 1982. The most recent agent's agreement entered into by Dixon and Nationwide became effective on January 1, 1981.

Most of the business Dixon secured for Nationwide was automobile coverage. This automobile insurance business was extremely unprofitable for Nationwide. The company lost over $400,000 on Dixon's automobile insurance business during the three-year period before the agent was fired. Dixon's automobile line of business was so unprofitable that his collective accounts were unprofitable as a whole. Nationwide lost money on Dixon's accounts since 1977.

Dixon and Nationwide are at odds on the reason for the unprofitability. Nationwide claimed that Dixon failed to follow its directive to actively solicit business in more lucrative market areas to offset the losses incurred in the automobile business. Dixon contended that he could not follow the company's marketing plan because he was required to spend too much time servicing existing insureds.

Countering Dixon's argument, Nationwide pointed to examples of other agents who had higher volumes of automobile insurance, with comparable amounts of business ceded to the reinsurance facility, but who were more profitable in their automobile lines and were profitable overall.[5] Dixon was Nationwide's most unprofitable agent.

Dixon filed suit against Nationwide alleging wrongful termination. At trial, he requested a jury charge that it is illegal to fire an agent for unprofitability resulting primarily from the sale of automobile insurance written in compliance with the statutory coverage mandate or for the amount of the agent's business that the company deems necessary to place in the reinsurance facility. He also sought to have the issue of punitive damages submitted to the jury. The Honorable G. Ross Anderson refused both requests and also rejected Dixon's motion for a directed verdict.

Nationwide, meanwhile, sought to have the trial court rule that section 38–37–940(2) was unconstitutional. The company argued that the statute exceeded the state's police power because it was not reasonably related to the public purpose asserted by the legislature for Act 1177. The district court rejected the argument and held that section 38–37–940(2), as applied, was constitutional. The jury returned a verdict for Nationwide. Judgment was entered accordingly.

Both Dixon and Nationwide have appealed. The agent claims the lower court erred by refusing to give the requested jury instruction, by failing to submit the issue of punitive damages to the jury, and by rejecting his motion for a directed verdict. The company appeals the court's ruling on the constitutionality of the statute.

## B. *Beckham v. Nationwide Mutual Insurance Co.; Watson v. Horace Mann Insurance Co.*

Like Wesley Dixon, James Lee Beckham worked as an agent for Nationwide Insurance Company. He had been employed by Nationwide since 1975. The most recent agent's agreement entered into by Beckham and Nationwide was executed in 1981. Dixon and Beckham were fired by Nationwide at the same time for the same articulated reasons.

Beckham also filed suit against Nationwide, alleging his contract was cancelled in violation of section 38–37–940(2). Nationwide, as it did in the *Dixon* case, moved for summary judgment on the ground that the private enforcement provision of that statute violated the Constitution.

In a separate action, Jasper N. Watson, Jr., filed suit against the Horace Mann Insurance Company ("Horace Mann") and its marketing agent alleging wrongful termination in violation of section 38–37–

---

**5.** *See* Joint Appendix of *Dixon v. Nationwide* at 288–91.

940(2). Watson had been an employee of the marketing agent for Horace Mann, Educators Marketing Services Corporation ("EMSC"), until his termination in 1982. Both Horace Mann and EMSC moved for summary judgment on the ground that section 38–37–940(2) violated the Constitution.

The motions in the *Beckham* and *Watson* cases were consolidated.[6] The Honorable Clyde Hamilton denied the insurance companies' motions, ruling that the statute was constitutional. In his Order of December 12, 1984, Judge Hamilton granted the insurance companies the right to seek immediate relief from this court.[7] The defendants jointly requested permission to appeal. This court granted that request and consolidated the case with the appeal of *Dixon v. Nationwide.*

## II. STATUTORY INTERPRETATION

Very simply, section 38–37–940(2) forbids the firing of insurance agents primarily because they write a large volume of automobile insurance or because a large portion of the automobile insurance which they write must be ceded to the reinsurance facility. The issue here is whether unprofitability, which is linked to a large volume of automobile insurance, is a permissible ground for firing an agent. Judge Anderson ruled that the statute would permit the firing of an agent for unprofitability. He instructed the jury accordingly.

Appellant Dixon contends that section 38–37–940(2) would forbid the cancellation of an agency contract for unprofitability if it can be shown that the unprofitability relates to the high volume of automobile insurance the agent must write. Although the statute speaks only in terms of "volume," Dixon argues that the state's general assembly must have intended to include unprofitability as an improper reason for dismissal. He correctly notes that one purpose of the statute was to protect agents from insurers who might try to avoid the coverage mandates by eliminating agents who write large amounts of undesirable insurance. Furthermore, Dixon contends that it would be illogical to assume that an insurer would fire its agent for writing a large volume of *profitable* automobile insurance. It is the unprofitability, he argues, that gives the insurer the incentive to fire an agent. He therefore maintains that unprofitability, if it relates to the volume of automobile insurance an agent writes, is an improper reason for dismissal.

On its face, Dixon's argument appears logical. Upon closer inspection, however, serious flaws are revealed. A large volume of automobile insurance business does not inevitably lead to an agent's unprofitability. Other Nationwide agents wrote as much auto insurance as Dixon. They managed to provide a profitable business for the insurer, however. Apparently, the key to the success these agents enjoyed was the ability to tap into more desirable markets to offset the losses associated with high-risk automobile coverage.

It is inconceivable that the South Carolina General Assembly intended Dixon's reading of the statute. To hold otherwise would be to provide agents the enviable luxury of becoming mere order takers for insurance. They could receive commissions without exerting an effort to market insurance to potentially profitable customers. Insurance companies would be placed in an intolerable position, however. The companies would be forced to retain all automobile insurance agents unless a firing was unrelated to the volume or profitability of an agent's automobile business. The required retention of extremely unprofitable agents, such as Dixon and Beckham, may pose a threat to an insurance company's solvency.

This court's interpretation of section 38–37–940(2) echoes that of South Carolina's Chief Insurance Commissioner. In 1978, the Commissioner construed section 38–37–940(2) in a case captioned *In re The Travel-*

---

6. The cases were not, however, consolidated for trial.

7. *See* 28 U.S.C. § 1292(b).

*er's Insurance Company.*[8] Confronted with the same question of statutory interpretation, the Commissioner ruled that cancellation of an agency contract for losses in automobile insurance business written is not a prohibited practice under section 38–37–940(2).

South Carolina's Chief Insurance Commissioner is charged with enforcing section 38–37–940(2).[9] Courts grant considerable deference to the statutory construction provided by the agency charged with executing the statute. *Faile v. South Carolina Employment Security Commission,* 267 S.C. 536, 230 S.E.2d 219 (1976); *Hart & Miller Islands v. Corps of Engineers,* 621 F.2d 1281 (4th Cir.), *cert. denied,* 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980). Since we are in agreement with the Commissioner's interpretation of section 38–37–940(2), we hold the district court did not err in its refusal to instruct the jury that South Carolina law forbids the firing of an insurance agent for unprofitability linked to the volume of mandated automobile coverage.

## III. DIRECTED VERDICT

A directed verdict may be granted only if, viewing the evidence most favorably to the party opposing the motion, the trial court concludes that the evidence is susceptible of a single interpretation by a reasonable trier of fact. *Walker v. Pettit Construction Co.,* 605 F.2d 128 (4th Cir. 1979). Since we have determined that the trial court's jury charge was appropriate, it is apparent that a directed verdict was not proper in this case. The insurance company produced ample evidence that Dixon was a very unprofitable agent. Evidence also indicated that other agents were more profitable than Dixon despite higher volumes of automobile insurance business. Thus, the jury could have reasonably concluded that Dixon was fired for his unprofitability rather than for the volume of automobile insurance business he generated. A directed verdict was therefore improper.

## IV. PUNITIVE DAMAGES

Dixon sought to have the issue of punitive damages placed before the jury. Judge Anderson refused, characterizing this case as one arising in contract. We need not reach the issue of whether the trial court erred in refusing to submit the issue of punitive damages to the jury. The refusal, if error, would be harmless because the jury returned a verdict for Nationwide on the issue of liability.

## V. CONSTITUTIONALITY

Nationwide argues that section 38–37–940(2) is unconstitutional because it exceeds the state's police power.[10] The insurer contends the statutory section is not reasonably related to the public purpose asserted by the legislature for Act 1177

---

**8.** Order of Chief Insurance Commissioner John W. Lindsey, February 28, 1978.

**9.** *See* S.C.Code Ann. §§ 38–3–60, 38–3–85(2) (Law.Co-op.1976).

**10.** The insurance companies rely on a decision by this court and one by the South Carolina Supreme Court to support the proposition that section 38–37–940(2) violates the Constitution. They argue that *Garris v. Hanover Insurance Co.,* 630 F.2d 1001 (4th Cir.1980) and *G–H Insurance Agency, Inc. v. Continental Insurance Co.,* 278 S.C. 241, 294 S.E.2d 336 (1982), confirm their assertion that the purpose of the anti-termination section is to protect only private rights and is not necessary to achieve the public purpose of the Act. This, they argue, would result in an unlawful exercise of police power. However, the discussions in those cases concerned

the balancing of public and private interests when the statute is applied to *existing* contractual rights. The constitutionality of the prospective application of the statute was not at issue. Furthermore, we note that this court in Garrison stated:

> We therefore accept that the challenged provision might well be necessary or certainly appropriate to accomplish a legislative purpose of protecting the economic interests of this particular segment of the insurance industry.

630 F.2d at 1010 n. 8.

It is also clear that section 38–37–940(2) promotes the general goal in South Carolina of preventing wrongful terminations that violate public policy. *See Ludwick v. This Minute of Carolina, Inc.,* — S.C. —, 337 S.E.2d 213 (1985) (recognizing the existence of an action in tort for wrongful terminations in violation of public policy).

and thus results in a confiscatory taking of property without due process of law as guaranteed by the fourteenth amendment. Judges Hamilton and Anderson disagreed and held that section 38–37–940(2) was constitutional as applied.

Judge Anderson ruled that section 38–37–940(2) was related to the statutory goal of insuring that a qualified applicant would be able to obtain auto insurance from the insurer of his choice. He noted that if insurance companies were permitted to fire agents for writing a volume of automobile insurance, local agents may become scarce. This would force existing or potential customers to seek their insurance coverage from another company.[11]

Judge Hamilton adopted the reasoning of Judge Anderson. He rejected the insurance companies' contention that section 38–37–940(2) confers only a private benefit to agents and does not achieve the public purpose of making auto insurance available, on a nondiscriminatory basis, to all drivers licensed by the state. Judge Hamilton concluded that the statutory anti-termination provision contributed substantially to the effectuation of this public purpose:

> If an insurance company could, without fear of reprisal, terminate agents who, in their opinion, were located in areas predominated by "bad risks" or who just had a history of servicing "bad risks," then the force of Act 1177 would be drastically obviated. Section 38–37–940(2) does not sanction a cause of action for any termination, only for terminations resulting from an agent's compliance with the mandates of the statute.[12]

█ We conclude, as did the trial courts, that section 38–37–940(2) is a reasonable exercise of the state's police power. We hold, therefore, that the statute was constitutional as applied.

## VI. CONCLUSION

In summary, we find that the trial court did not err in refusing to instruct the jury that an insurance company violates section 38–37–940(2) if it terminates an agent for unprofitability linked to a high volume of required auto insurance business. Furthermore, we hold that the trial court did not commit error in refusing to submit the issue of punitive damages to the jury or to direct a verdict for Dixon. Finally, we conclude that Judges Anderson and Hamilton were correct in finding that section 38–37–940(2) was constitutionally applied in these cases. The decisions below are therefore

AFFIRMED.

JAMES DICKSON PHILLIPS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision in *Beckham,* and with that portion of the opinion that rejects the constitutional challenge in *Dixon.* Because I would give S.C.Code Ann. § 38–37–940(2) a reading different from that employed by the district court, however, I conclude that the district court in *Dixon* erred in failing to instruct the jury that it is illegal, under South Carolina law, to fire an insurance agent for unprofitability associated with the volume of insurance ceded to the state reinsurance facility.

Section 38–37–940(2) prohibits firings based on the volume of insurance written by an agent and reinsured under the state insurance plan, but as construed by the district court and the majority opinion, the protection for agents intended by the South Carolina General Assembly is lost. It is inconceivable that an agent would be fired for placing a high volume of insurance that was profitable, and thus it can be presumed that the volume of an agent's insurance will only give rise to his termination if the insurance is also unprofitable. Given the reading of § 38–37–940(2) adopted by the majority, the statutory protection will have no effect, because in every case where an agent is fired because of volume his former

---

**11.** Joint Appendix of *Dixon v. Nationwide* at 28–29.

**12.** Joint Appendix of *Beckham v. Watson* at 61.

company will be able to point to his unprofitability as a separate legal justification for the firing. There will be no case in which the statute will afford the protection intended by the legislature.

The majority seems to recognize this problem, but suggests that any other reading of the statute would permit agents to become "mere order takers." Of course, the failure of an agent to solicit new business in more profitable insurance lines would provide the employer with an independent basis for firing the agent. In *Dixon*'s case, in fact, Nationwide alleged that Dixon had become an "order taker." Even if the district court had properly instructed the jury that Dixon could not be fired for unprofitability associated with statutorily ceded coverage, then, the jury might have found that Nationwide had cause for firing Dixon despite the protection of the statute.[1] Reading the statute in the manner that gives it a practical effect will not, therefore, lead to the "intolerable" agent habits envisioned by the majority.[2]

Because I conclude that the jury in *Dixon* should have been instructed that Dixon was illegally fired if his termination resulted from the unprofitability of insurance placed through him with the South Carolina reinsurance facility, I disagree with the majority's conclusion that it is unnecessary to address whether the jury should also have been instructed that it could award punitive damages. Section 38–37–940(2) creates a new right of action in tort for wrongful termination by providing a new ground upon which a termination may be said to be wrongful. *See G–H Insurance Agency v. Travelers Insurance Co.*, 270 S.C. 147, 241 S.E.2d 534, 536 (1978). Punitive damages should have been available to

Dixon here, just as they would be in South Carolina to any other plaintiff alleging a cause of action arising in tort.

Accordingly, I dissent from that portion of the majority opinion that upholds the district court's failure to properly instruct on liability and punitive damages.

---

1. Because the jury was presented evidence on this theory, a directed verdict in Dixon's favor would have been improper.

2. The statutory interpretation of the state insurance commissioner referred to by the majority opinion similarly fails to give effect to § 38–37–940(2). Although an interpretation of the statute by an administrative official is normally accorded deference, we are not bound to adopt that interpretation if there are cogent reasons

not to do so. *See Faile v. South Carolina Employment Security Commission*, 267 S.C. 536, 230 S.E.2d 219, 221–22 (1976). That the commissioner's interpretation gives the statute no meaning provides a cogent reason to adopt a different reading of the statute. *Cf. Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) (agency interpretation of its own regulations not entitled to deference if plainly erroneous or inconsistent).